# APPEAL OF J. B. POWERS ET AL.

[POWERS ET AL. v. BALD EAGLE BOOM CO.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CLINTON COUNTY.

Argued March 20, 1889—Decided April 1, 1889.

[To be reported.]

1. The common law maxim that wherever there is a right there is a remedy, has not been adopted by courts of equity. One may sleep upon his right until he loses it. If he looks on and allows large sums to be expended and intervening interests to grow up, the fact that he might have successfully objected at the outset, will not avail.

2. If an injunction is prayed for where, upon consideration of the whole case, it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor.

3. Where an addition to a boom was built in 1869, and used continuously thereafter, thousands of dollars being invested in it and in business enterprises depending upon it, it is too late for property owners injured thereby but who have acquiesced until 1883, to assert then that the boom company had no right, under its charter, to build the addition in the way in which it was built.

(a) The act of April 13, 1859, P. L. (1860) 863, authorized the Bald Eagle Boom Company to " erect and maintain on the south side of Bald Eagle creek such boom or booms with piers as may be necessary for the purpose of stopping and securing logs . . . . . upon said creek, and such piers, side branches, or shore booms as may be necessary for that purpose," with a proviso that the boom should be so constructed as " not to impede the navigation of said creek." Upon bill in equity to restrain the building and maintaining of piers by said company, north of the middle line of said creek. *Held:*

4. That this act authorized the construction of a boom by said company, on the south side of the creek, using that shore as one side of the inclosure, and the erection of the necessary piers to complete the inclosure on the other side; and that the only limitation as to the location of such piers was that they should be so built as not to interfere with the navigation of the creek.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 262 January Term 1888, Sup. Ct.; court below, No. 2 September Term 1883, C. P. in Equity.

Bill in equity filed to September Term, 1883, by Joseph B. Powers and Catharine Powers, his wife, in the right of said Catharine, against the Bald Eagle Boom Company, Simon Scott, president, and Jacob Scott, treasurer of the said corporation, to compel the defendants to remove certain booms from the Bald Eagle creek, to restrain them forever from erecting and maintaining like illegal structures, and from preventing the unobstructed flow of the waters of said creek in the ancient channel thereof. Demurrer and answers having been filed, the cause was referred to *Mr. Jesse Merrill*, as master.

The facts are fully set out in the opinion of the court below, which after the report of the master, and the filing of numerous exceptions by both parties, was delivered by MAYER, P. J., and was as follows :

The Bald Eagle Boom Company is a corporation created and existing under an act of assembly, approved April 13, 1859. By the second section of the act it was authorized and empowered to erect and maintain, on south side of Bald Eagle creek, between a point opposite the mouth of Fishing creek and the mouth of Marsh creek, such boom or booms, with piers, as may be necessary for the purpose of stopping and securing logs, masts or spars, and other lumber floating upon said creek, and erect piers, side branches or shore booms, as may be necessary for that purpose : Provided, that the said booms shall not be so constructed as to prevent the safe passage of rafts, boats, logs, masts, spars or other lumber, and not impede the navigation of said creek or the branches thereof.

By the third section it is provided : " That if any person or persons shall suffer damage by the exercise of the powers herein granted to said corporation, and the amount thereof cannot be agreed upon by the parties, nor such suitable person or persons agreed upon to estimate the same, the Court of Common Pleas, having jurisdiction in the county where the boom or booms are situated, shall, upon application of the parties aggrieved, cause said damage to be ascertained by three disinterested freeholders of the same county, to be appointed by said court, and who shall make report to the said court on or before the first day of the term next after the award shall have been made, and which, being confirmed by the court,

Opinion of Court below.

shall have the effect of a judgment from the time of such confirmation : Provided however, That if either party be dissatisfied with the award of said commissioners, and shall, at the time at which the said award is presented for confirmation, apply to said court for a trial by jury in the manner as other like cases are determined, the court shall by jury determine the amount of such damages accordingly ; and if the verdict shall not be more favorable to the party applying for the jury, than the award given by the commissioners, judgment for costs shall be rendered against the applicants ; and if the verdict be more favorable to the party applying for a jury, than was awarded by the commissioners, the applicants shall receive costs, and execution shall in either case issue upon the judgment ; said corporation shall not take any private property until compensation be made or adequate security be given therefor before such property shall be taken."

The eighth section provides : " That for the purposes aforesaid, the said corporation be and are hereby authorized and empowered to purchase, hold and possess any real estate adjacent to said boom or booms, or convenient thereto, with leave to build all such buildings as may be deemed necessary for the convenient management of the affairs of said corporation ; and for the same purposes their agent and those in their employ are hereby empowered to use and occupy the lands on the shore of said creek, so far as may be necessary, at the place or places where said booms are erected, and at such other place or places as may be necessary for rafting and securing logs and other lumber, and to pass and re-pass, on foot, to and from said boom or booms over the lands on both sides of said creek, for the purpose of erecting said boom, or making repairs from time to time, and generally for doing all matters and things necessary for the full accomplishment of the object of this corporation ; subject, however, to pay such damages as may arise in the prosecution of such objects or purposes, the damages to be ascertained as in the third section of this act."

The master finds that in pursuance of the powers conferred by its charter, the defendant corporation in 1860 and 1861 erected a boom, consisting of stone piers built in the bed of Bald Eagle creek, these piers connected with each other by sticks of timber fastened to the piers and floating on the top

of the water between them ; beginning at a point opposite the
farm of N. W. Fredericks where the lower pier was connected
with the shore above the mouth of Fishing creek, on the south
bank of Bald Eagle creek, up said stream and nearly in the
centre thereof, to an island opposite the farm of Welsh, which
is the third farm east of the plaintiffs', at a cost of about twen-
ty thousand dollars and being about three fourths of a mile in
length, with a capacity to hold about two million feet of logs ;
the amount of lumber floated down said creek being largely
increased each year.   In 1869 the corporation built an addition
of eight piers at a cost of twenty-four hundred dollars, extend-
ing up said creek from the island above named to a point oppo-
site the western line of William Huff's land, which is the second
farm east of the plaintiffs'.   These piers, beginning at the head
of the island, are north of the middle of the creek and grad-
ually approach the northern bank, the upper one and the one
next to it being sixty-six feet six inches from that shore and
two hundred and sixty-five feet four inches from the southern
shore.   At a distance of one hundred and thirty-five feet eight
inches south from said pier, is the head of the island in the
creek.   The distance across the head of the island is sixty-one
feet eight inches and from there to the southern bank of the
creek is sixty-eight feet.   For the purpose of turning the logs
and lumber floating down the creek into the boom, a sheer,
which is made of square timber bolted together, three sticks,
and about three feet wide, and about one hundred and twenty-
five feet long is fastened to the next to the upper pier, and to
the upper pier it is fastened by a chain that can be lengthened
or shortened at the pleasure of the person managing it.   Dur-
ing a flood when logs and lumber are running in the creek this
sheer is kept extended towards the north shore and reaches
within twenty-five feet four inches of that shore.   By means
of the chain attached to it from the upper pier it can be drawn
in to that pier, and there is no evidence that any person has
been delayed, impeded or prevented from navigating said creek
with rafts, boats, logs or other lumber by reason of said boom
or of the sheer, although it is established beyond controversy
that the whole bed of the creek has on several occasions been
filled with logs from shore to shore and that it was caused by
the acts of this corporation, whether by connecting the end of

the sheer with the north shore by a log fastened to it as alleged by the plaintiffs, or by allowing the loose logs to run into and remain in the eddy said to exist there, as alleged by the defendant, and thus fill up the narrow passage between the end of the sheer and the shore, is immaterial.

The plaintiffs are the owners of a farm situate upon Bald Eagle creek, containing one hundred and seventy-one acres, and have filed their bill, in which they complain that the Bald Eagle Boom Company, in the erection and maintenance of its boom with piers, side branches, and sheer booms, has not conformed to the requirements of the second section of its charter, in that its booms, piers, side branches and sheer booms are not wholly erected and maintained on the south side of said Bald Eagle creek, but (excepting some of the lower piers) extend greatly over into the north side of the same, and the said booms are so constructed that they prevent the safe passage of rafts, boats, logs, masts and other lumber down said Bald Eagle creek, the navigation of which is thereby not only impeded, but entirely closed and rendered impassable.

The master finds that in the years 1881, 1882 and 1883, the boom was filled with logs, and by reason of the closing of the passage on the north side, between the upper pier and the shore, as found above the bed of the creek, was packed with logs, solidly, to the bottom of the creek for a considerable distance above the upper pier, and the water, which would have naturally flowed off in the channel of the creek, was forced or turned over the northern bank, and ran over the land and meadow along the bank and over the land and meadow of the plaintiffs ; the southern bank of the creek is a high bank or bluff about twenty feet above the level of the creek, and no part of the water could escape in that direction ; that the water so turned out of said stream by running over the land of the plaintiffs, damaged their land, crop and fences in the year 1883 to the amount of $169\frac{88}{100}$, and that the water spread over the bottom of the meadow for a couple of days.

The master further finds : " That from the year 1875 to 1885 inclusive there were caught by, and rafted out of the Bald Eagle boom 106,874,269 feet of logs, ninety-two and one fourth per cent of which were manufactured into lumber at the saw-mills at Lock Haven and vicinity, and the balance sent

to places farther down the river; that there is still standing on the waters of Beech creek, a tributary of Bald Eagle creek, from which the logs and lumber that float into the boom principally come, between 225,000,000 and 275,000,000 feet of white pine, yellow and jack pine, hemlock, oak, chestnut, birch and other hard wood saw timber, the stumpage of which is worth $800,000; that the natural and only way to get this lumber to market is down Beech creek into Bald Eagle creek and Bald Eagle boom; that without this boom, as at present constructed, it would be impossible to hold and raft out the logs now annually put into Beech creek and Bald Eagle creek, so as to get them to the mills and have them sawed the same season; that an extension of the boom up the middle of the creek and occupying only the southern half, whilst it might hold the logs would be practically of no use, as they could not be rafted out of such extension excepting during a flood, and they do not last long enough to accomplish it."

The complainants deny the right of the corporation defendant, "under any pretended authority derived from said act of assembly, to construct and maintain their said booms and other structures, in the manner as they now are as aforesaid, and your orators have a right to have said boom, booms with piers, side branches and shore booms, so constructed and maintained as not to impede, or obstruct the navigation of said Bald Eagle creek, which is a public highway and, especially, is the defendant required to confine said boom and booms with piers, to the south side of Bald Eagle creek and to so erect and maintain the same, that the northern half part or portion of the creek, may be left free and unobstructed thereby, for the flow of water at all times and the safe passage of rafts, boats, logs, masts, spars, or other lumber, and so that the navigation thereof be not impeded, not only for your orators, but also for the use and benefit of all citizens of the commonwealth of Pennsylvania;" and aver, "that upon the true construction of the act of assembly, incorporating the defendants, approved April 13, A. D. 1859, the upper portion and extension of said boom or booms with piers, side branches and shore booms have not been erected and constructed, and are not maintained in conformity with the provisions of said act, but in violation of the same, as aforesaid; but further, the erection, construction and mainte-

nance of said platform, attached as aforesaid, to the first or head pier and the second pier of said boom with piers, is wholly without authority of law, and the erection, construction and maintenance of the same, in connection with the boom as aforesaid, is a great nuisance, working irreparable damage to the complainants as aforesaid."

And they pray that said defendants may be compelled, by decree of this honorable court, to make reasonable compensation to your orators, for all damage done to them and their said land by defendants as aforesaid: That said defendants may be compelled by decree of this honorable court to remove said illegal structures, erected and maintained by the defendants as aforesaid, out of, and from, the said Bald Eagle creek; that the defendants, and all officers, agents and servants of said corporation, may be restrained, by injunction, issued out of this honorable court, from continuing and maintaining their booms which they have erected in the Bald Eagle creek aforesaid, and forever hereafter from the erection and maintenance of like illegal structures in said Bald Eagle creek; that the defendants and all officers, agents and servants of said corporation may be restrained by injunction issued out of this honorable court forever hereafter from preventing the safe passage of rafts, floats, logs, masts, spars, or other lumber and from impeding the navigation of said Bald Eagle creek; that the defendants, and all officers, agents and servants of said corporation may be restrained, by injunction, issued by this honorable court, forever hereafter, from preventing the full and unobstructed flow of the waters of the Bald Eagle creek, in and along the northern portion of the ancient channel of the same.

The right of the plaintiffs to maintain their bill depends upon the construction of the second section of the act of assembly incorporating the defendant. If the true construction of said section is, as contended by plaintiff, that the corporation cannot erect and maintain any of its structures beyond the south half of Bald Eagle creek, but that they must be confined wholly within said south half, then the bill of plaintiffs can be maintained, as the structures of defendant would be illegal and in violation of the terms of its charter, and this could be inquired into at the suit of plaintiffs under the provisions of

the act of June 19, 1871, P. L. 1360. If the corporation has not exceeded its corporate powers, and an injury has resulted to the property of the plaintiffs, by acts done by the corporation in the exercise of its corporate franchises, then recourse must be had to the remedy provided in the third section of the act of incorporation, and a bill in equity will not lie.

The liability of the defendant in this form of proceeding being dependent upon a construction of its charter, we are remitted to a consideration of its requirements. What, then, is a fair construction of the second section of the defendant's charter? It is a well settled rule of construction applicable to charters of private corporations, that they are to be taken most strongly against the corporators or persons who claim rights or powers under them, and most favorably for the public: Packer v. Railroad Co., 19 Pa. 211; Johnson v. Philadelphia, 60 Pa. 445; Commonwealth v. Railway Co., 52 Pa. 506. But. the construction must be a reasonable one, so as not to defeat the purposes of the grant: Brown v. Susquehanna Boom Co., 109 Pa. 57.

[By the words of the second section of the charter, the company was authorized to erect and maintain on the south side of the Bald Eagle creek, such boom or booms with piers, as may be necessary for the purpose of stopping and securing logs, masts, etc., and erect such piers, side branches or sheer booms as may be necessary for that purpose; Provided, That the said booms shall not be so constructed as to prevent the safe passage of rafts, boats, logs, masts, spars, or other lumber and not impede the navigation of said creek or the branches thereof. The contention on the part of the plaintiff is, that under the provisions of this section, the defendant is only authorized to erect and maintain its booms on the south half of Bald Eagle creek, and that its structures must be restricted and confined to the south half of the stream; and, as the master has found that the piers of the corporation above the island are placed beyond the middle of the creek, it is an exercise of corporate power not conferred by the charter, and that the plaintiffs are entitled to the relief prayed for. While it is true that the words "south side" are somewhat indefinite, yet we think there can be no difficulty in arriving at their correct interpretation. We are of the opinion, that the words "south side" were meant or

Opinion of Court below.

intended for the south shore or bank of the creek, and not as claimed by the plaintiffs, the south half of the stream. Webster's Dictionary defines, "side," as the "margin, edge, verge or border of a surface, as the side of the field, the side of a river." In the criminal procedure act, § 49, the word side is used as synonymous with bank. "In all cases where the side or bank of any navigable river or creek, canal or inland navigation, or the centre or other part thereof shall constitute the boundary of any two counties, it shall be," etc.] [1] [We are aided in this interpretation by the fact, that the second section of defendant's charter is an exact copy of the second section of the West Branch Boom Company's charter: Act of March 29, 1849, P. L. 245, except that in the proviso to the second section of the charter of the West Branch Boom Co., the words "that said boom shall not extend more than half-way across said river," have been omitted from the proviso contained in the second section of defendant's charter, thus indicating that defendant was not to be restricted to the half of the stream, and that the only limitation to the exercise of its corporate power was, that the navigation of the creek was not to be impeded so as to prevent the safe passage of rafts, boats, logs, etc.] [2] This being our construction of the defendant's charter, it is unnecessary to consider the various exceptions filed to the report of the master. [The defendant being in the exercise of powers which were granted by its charter, the plaintiff must resort to the remedy provided by the third section and their bill cannot be maintained.] [3] A court of equity will not entertain jurisdiction where a statutory remedy has been provided; the latter must be pursued.

For the reasons herein stated, in addition to those given by the master, the bill of the plaintiffs must be dismissed. It is, therefore, ordered, adjudged and decreed that the bill of the plaintiffs be dismissed with costs, to which final decree, the solicitor of the opposite party, being present, does not object as to the form thereof.[4]

The bill being dismissed accordingly, the plaintiffs took this appeal assigning for error:

1–3. The parts of the opinion embraced in [ ] [1 to 3]

4. The decree of the court dismissing the bill.[4]

*Mr. Seymour D. Ball*, for appellants:

1. By the interpretation placed upon the act by the court below, the Boom Company is ruining plaintiffs' farm, by reaching far beyond where the legislature permitted her to go, with her boom structures. To allow this, in cases like this, would be in the teeth of the well-settled rules of construction of charters of private corporations, restrictive of individual rights: they cannot be extended beyond the letter and spirit of the act of incorporation, are to be taken most strongly against the corporation, whatever is not expressly given is withheld, and if the charter leaves the right claimed by the corporation doubtful, the doubt must be resolved in favor of the commonwealth: Packer v. Railroad Co., 19 Pa. 211; Commonwealth v. Railway Co., 52 Pa. 506; Johnson v. Philadelphia, 60 Pa. 445; Emerson v. Commonwealth, 108 Pa. 111.

2. Admitting, for the sake of the argument, the court below was right, in his interpretation of defendant's charter, deciding that she has the right to erect and maintain her boom structures in the north half of Bald Eagle creek, "and that the only limitation to the exercise of its corporate power is, that the navigation of the creek is not to be impeded so as to prevent the safe passage of rafts, boats, logs, etc.," still we contend the court erred, in dismissing plaintiffs' bill, because it was plainly and amply proven, that the permanent boom structures of defendant extended nearly across Bald Eagle creek and sometimes the company attached one end of a log to the upper end of the sheer boom and the other end of it to the north shore and thus closed the entire stream; that at different times in 1881, 1882, and 1883, the logs stopped by said structures on the spring floods would roll under one another, pile up and pack together solid to the bottom of the creek, and would thus fill up the boom and above it from shore to shore, making a dam across the whole creek.

3. The plaintiffs have pursued their proper remedy, for said injuries done them as they allege, by said corporation claiming rights and franchises not conferred upon her, and doing what she has no authority to do as aforesaid. Upon examination in this proceeding it has been ascertained and found by the master, that the injuries complained of, have been done the plaintiffs by said corporation, contrary to the provisions of her charter;

Arguments.

that the rights and franchises of erecting and maintaining the boom structures of said corporation, from which such injuries resulted, have not been conferred upon said corporation. Therefore it was error to dismiss plaintiffs' bill. Appellants have the right to look to the courts for relief by injunction, and for compensation in damages, as determined by many cases in this court, and as expressly provided by the act of assembly of June 19, 1871, P. L. 1360: Denny v. Brunson, 29 Pa. 384; Sheetz's App., 35 Pa. 94; Stewart's App., 56 Pa. 422; Masson's App., 70 Pa. 30; Sterling's App., 111 Pa. 35.

*Mr. W. C. Kress* (with him *Mr. Charles Corss*), for appellee:

1. The master has found "that without this boom, as at present constructed, it would be impossible to hold and raft out the logs now annually put into Beech creek and Bald Eagle creek, so as to get them to the mills and have them sawed the same season; that an extension of the boom up the middle of the creek and occupying only the southern half, whilst it might hold the logs, would be practically of no use, as they could not be rafted out of such extension, excepting during floods, and they do not last long enough to accomplish it." Now as the grant is for "such boom or booms with piers, as may be necessary for the purpose of stopping and securing logs, masts, or spars and other lumber floating upon said creek, with the right to erect such piers, side branches, or shore (shear) booms as may be necessary for the purpose," such a construction will not be placed upon any clause or words in the charter as will defeat the grant itself: Whitaker v. Canal Co., 87 Pa. 34; Brown v. Susq. Boom Co., 109 Pa. 57; Susquehanna Boom Co. v. West Branch Boom Co., unreported; Commonwealth v. Railroad Co., 27 Pa. 356; Monongahela Bridge Co. v. Kirk, 46 Pa. 112.

2. The effect of removing this boom would be disastrous to enormous vested interests. An injunction ought not to be granted when the benefit secured by it to one party is of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrong-doer of the benefit of any consideration as to its injurious consequences: Morris etc. R. Co. v. Pruden, 20 N. J. Eq. 530; Higbee v. Railroad Co., 20 N. J. Eq. 435; Huckenstine's App., 70 Pa. 106.

3. Where a man lies by and permits another to erect works at great expense and to use them for several years without objection, he cannot afterwards come into a court of equity for an injunction to restrain the use of such works in the same manner as they have been before used : 4 Wait's Act. & Def., 770 ; Southard v. Canal Co., 1 N. J. Eq. 518 ; Carlisle v. Cooper, 21 N. J. Eq. 583.

OPINION, MR. JUSTICE WILLIAMS :

The maxim of the common law, that wherever there is a right there is a remedy for its infraction, has never been adopted by courts of equity. A party whose right is clear may sleep upon it until his demand becomes stale. He may look on while valuable structures are erected, when he might successfully object, and remain silent until large sums have been expended or important intervening interests have grown up. In such cases the fact that he might have objected at the outset will not avail him. A suitor must not only appear in a court of equity with clean hands, but he must come with reasonable promptness, in good faith, and with a just and equitable demand; otherwise the conscience of the chancellor will not be moved. If an injunction is prayed for where upon a consideration of the whole case it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor.

An application of these well settled principles of equity jurisdiction to the plaintiffs' case is fatal to it. The Bald Eagle Boom Company was incorporated in 1859. Its boom was constructed soon after. In 1868 and 1869, the addition to the boom complained of by the plaintiffs was built, and a shear boom hung to turn the logs from the north shore of the stream into the main structure. The boom as extended has been in constant use since 1869. It is in an important sense a public improvement, in the maintenance and use of which the lumbermen and owners of timber lands on the Bald Eagle creek and its tributaries are interested. Thousands of dollars have been invested in it and in mills that are made accessible by it, and many millions of feet of timber are annually caught in it and rafted out to be manufactured at the mills in Lock Haven and other places down the stream. During all this time the plaintiffs have not been heard to object to the work of construction, but have ap-

plied for and secured an assessment of their damages on account thereof; and on one or more occasions, since, have recovered damages resulting from an overflow of their land when the boom was filled with logs.

The plaintiffs now assert that the boom company had no right to build the piers of the extension of the boom where they were built in 1869, and ask that the corporation be "restrained by injunction from continuing and maintaining their booms erected in said creek and forever hereafter from the erection and maintenance of like illegal structures in the same."

This denial of the right of the boom company, coming after so many years of acquiescence, after the boom has become a necessity to the mills that have grown up in its neighborhood, and after the damages sustained by the plaintiffs in consequence of the construction of both the original boom and the enlargement in 1869 have been assessed at their instance and paid by the boom company, comes too late to be conscionable. There is no equity in the plaintiffs' case, and the court below would have been fully justified in dismissing the bill for that reason. But if we turn now to the question of construction presented by the first and second assignments of error, the plaintiffs are equally without solid ground on which to stand.

The act of 1859 authorized the Bald Eagle Boom Company to "erect and maintain on the south side of Bald Eagle creek such boom or booms with piers as may be necessary for the purpose of stopping and securing logs, masts, and spars or other lumber floating upon said creek, and such piers, side branches, or shore booms as may be necessary for that purpose," with a proviso that the boom should be so constructed as "not to impede the navigation of said creek or the branches thereof." The plaintiffs insist that the words "on the south side of Bald Eagle creek" require the boom company to build on the south side of the middle line of the creek, or at most to include only the south half of the stream. But what is a boom? It is an inclosure or artificial harbor for logs and lumber, of which one side is furnished ordinarily by the natural bank of the stream and the other is provided by the piers and the timbers or other obstruction to the passage of logs which connect them together. An act authorizing the construction of a boom on the south side of a stream is authority to use the shore

on that side as part of the inclosure and to erect in connection therewith the piers necessary to complete the inclosure on the other side.

Where these shall be located may be settled by the statute by words of direction, as "to be built along the middle of the stream" or "not to approach the opposite shore nearer than one hundred feet," or other expression indicating the purpose of the legislature to confine the exercise of the power granted to certain definite limits. In the act before us the only limitation is found in the proviso which declares that the piers shall be so built as "not to interfere with the navigation of the said creek or its branches." The boom is to be so built that the south shore shall be occupied for that side of the inclosure. The open channel for navigation is to be on the north side, and is to be sufficient for the purposes of navigation. Subject to the restriction in the proviso, the boom company may so locate their piers as to enable them to meet the purposes for which their incorporation was intended.

It follows from what has now been said that the ruling complained of in the third assignment was entirely proper so far at least as this case is concerned.

The plaintiffs' remedy is not in equity but at law. Whether that remedy is under the act of incorporation or whether, upon the facts of this case, an action can be maintained, is not before us, and we are quite willing to wait until it is presented before expressing an opinion upon it.

The decree of the court below is affirmed at the costs of the appellants.