# Good, Appellant, *v.* Queens Run Fire Brick Company.

*Equity—Laches—Nuisance—Construction of siding on street.*

Where an industrial corporation lays a private railroad siding on a street in a residential neighborhood of a city with the municipal consent, but without the consent of an abutting landowner, and such owner makes no objection and files no bill to restrain the nuisance, but permits the operation of the siding for ten years when an additional track is laid, and the plant of the company increased at a great expense, and no objection is made to this for an additional five years, when the owner files a bill, the owner will be deemed to have been guilty of laches, his bill will be dismissed and he will be left to whatever remedy he may have at law.

Argued March 16, 1909. Appeal, No. 72, Jan. T., 1909, by plaintiffs, from decree of C. P. Clinton Co., Jan. T., 1906, No. 2, dismissing bill in equity in case of Kate A. Good et al. *v.* the Queens Run Fire Brick Company and the Pennsylvania Railroad Company. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

HALL, P. J., filed the following opinion:

The plaintiffs' bill in this case was filed November 11, 1905. The allegations contained in the bill which they have endeavored to sustain by the testimony are briefly as follows:

Kate A. Good has been, since the year 1876, the owner in fee of two certain lots of ground situate on Water street, in the city of Lock Haven, upon which she resided, together with her husband and family, in a large three-story brick dwelling house which was erected thereon at the time of the purchase of said lots in 1876. There was also a brick stable erected on the prem-

ises at that time.   The dwelling house was remodeled, enlarged and furnished in modern style with suitable furniture in the year 1900, at which time the plaintiffs built another stable on another lot in the rear of those on which the dwelling house is located.   The dwelling house is situated in the most beautiful and attractive part of the city and until the occurrences complained of was a very desirable location for residential purposes.   The family consists of herself, her husband and four children, all adults.   They keep horses and carriages for their convenience, pleasure and business.

Water street, on the northerly side of the plaintiffs' property, is a public highway, extending on its northerly side to the bank of the west branch of the Susquehanna river, which is also a public highway.   The street is now about fifty feet in width.

About the year 1887 the Queens Run Fire Brick Company, a corporation, one of the above-named defendants, erected a large fire brick plant between Water street and the river, extending to a point about 500 feet east of the plaintiffs' residence and without permission of the plaintiffs it entered upon Water street in front of their residence and cut down certain trees which were not only ornamental but useful ·in protecting the bank from floods and the premises of the plaintiffs from ice and drift.   It constructed a railroad of standard guage, with cross ties eight feet long and with ballast and rails upon Water street along the entire front of the plaintiffs' premises, eastwardly therefrom to the brick company's plant and westwardly therefrom to the Philadelphia & Erie Railroad, thereby appropriating part of the street fronting on the plaintiffs' property, preventing the use thereof by the plaintiffs and by the public and diverting it from the purpose for which it was intended.   The Pennsylvania Railroad Company, a public corporation, commenced running its locomotives and cars on the said railroad for the purpose of hauling coal to, and the manufactured product from, the said fire brick plant, and has been running its trains on said railroad until the present time.

The fire brick company has a large tract of land on the north side of the Susquehanna river, from which it obtains its fire clay used in its manufactory, and for some time after the

construction of this plant it transported this clay from its mines to the river by cars and then took it by boats on the waters of said river to its said plant, but about the year 1900 it ceased to transport its clay in this manner and since that time has been transporting the same over the Philadelphia & Erie Railroad to its intersection with the brick company's railroad above mentioned, and then over the railroad of the brick company to its plant. At this time the brick company built an additional track at the eastern end of its railroad which was elevated about eighteen or twenty feet above the surface of the ground on trestles in order that the clay might be carried by cars over this trestle into the works. This elevation made a very heavy grade a short distance east of plaintiffs' premises. An average of about one train a day would run over the brick company's railroad up until the time when it began transporting its clay in this manner, but the transportation of the clay made additional trains necessary, and since the year 1900 the said plant has been very much enlarged and its capacity greatly increased, so that the number of trains per day has increased and they are much heavier than they formerly were, and in order to handle the cars up the steep grade at the eastern end of said railroad to the top of the trestle, more power is required than formerly, and in the effort made in front of the plaintiffs' premises to gain the necessary momentum to run up the incline, great noise is made and great volumes of smoke are emitted from the engines. There is also a great deal of switching and shoving of trains in front of the plaintiffs' premises. The brick company's railroad is situated twenty-three feet from the curb in front of plaintiffs' front door and within nineteen and one-half feet of the curb line at the western end of their lots, thus rendering the street difficult of passage and making it impossible to turn vehicles in the street. The running of the trains frightens the horses of the plaintiffs and those of visitors at their house, so that it is dangerous and frequently impossible to drive in front of the house. Horses have been frightened and broken loose and ran away there so that the tying of horses in front of the plaitiffs' premises has necessarily been abandoned.

The large and heavy trains running with the power necessary to enable them to arise to and upon the said trestle, the shoving of engines and switching of cars shake the ground and jar the plaintiffs' house to such an extent that windows have been broken, foundation walls impaired, plastering and brickwork cracked, pictures and bric-a-brac shaken from the walls and clocks so affected and injured that they will not keep time.

The smoke, dust and soot from the locomotives enter the plaintiffs' house and damage its walls and ceilings, furniture, clothing and carpets therein, and when the wind is from the east no clothes can be hung out to dry without being soiled by the soot from the locomotives. The operation of the railroad renders the plaintiffs' property less desirable as a residence, increases the danger to the occupants of the house and to the property, greatly to the injury of the plaintiffs, and their property is consequently impaired and depreciated in value.

The plaintiffs ask the court by reason of these injuries complained of, first, to enjoin the Pennsylvania Railroad Company from running its locomotives and trains upon the railroad of the said brick company; second, to compel the Queens Run Fire.Brick Company to remove its said railroad and to restore Water street to the same condition, so far as is possible, that it was in before the construction of said railroad. As to their third request, the allegations upon which it is founded have been abandoned, as we understand it, as no testimony was taken to support them. It may, therefore, be disregarded. Fourth, that the defendants be compelled to make compensation to the plaintiffs for all damages suffered by reason of the matters complained of, and fifth, for general relief.

To this bill the Queens Run Fire Brick Company filed its answer setting up, among other things, that at the time of the erection of their plant in 1887, and the construction of their railroad on Water street, the plaintiffs' residence consisted of a very ordinary dwelling house and small stable on the same lot, both being of an unpretentious character; that the plaintiffs at that time made no objection or protest against the erection and establishment of the plant and the railroad connected therewith, but with full knowledge of the same, stood by and

permitted it to invest large sums of money in its said plant and acquiesced therein for a long time; that the plaintiffs enlarged and remodeled their residence in the year 1900 at which time the brick plant was in active operation, under conditions not as favorable for surrounding properties as they exist at present; that it has invested $250,000 in its plant and employs continuously about 250 laborers, its monthly pay roll amounting to $9,000; that its manufacture of brick is conducted on the most approved plan and by the best of modern machinery and methods. In 1903 it remodeled its plant, placing all machinery on heavy concrete foundations and otherwise went to a large expense to make the operation of the machinery noiseless and free from vibration, which result was obtained; that at this time also the plaintiffs were fully aware that the plant was being remodeled in such increased capacity, but stood by and permitted large sums of money to be expended for this purpose; that only one train goes into the plant in the morning between 7 and 8 o'clock and remains there on an average about fifteen minutes, and another train goes into the plant during the afternoon and remains a period of about thirty minutes, and that these two trains are the only ones going in and out of the plant each day; that the change in the method of transportation of their clay from water to rail was rendered necessary by lack of water in the river on which to float their boats and flats, and that the change from water to rail is at an increased expense. That they are the largest industry in the city of Lock Haven and pay taxes to the city and county amounting to over $1,400 a year; that all of their employees live in Lock Haven, or its immediate vicinity, and that if the prayer of the bill is granted it will be necessary for it to close down its plant and to remove the same from the city of Lock Haven, thereby entailing irreparable loss and damage, not only to the brick company, but to the city, resulting in the loss of employment to a large number of men, and greatly depreciating the general business of the town and the value of the property therein.

The Pennsylvania Railroad Company also filed an answer denying that it was interested in or had anything to do with

the locating and constructing of the said railroad, or that it was ever interested in either as owner, lessee or otherwise or ever controlled or had the right to control the maintaining and operating thereof, but so far as it knows said railroad was constructed, maintained and operated by the fire brick company separately and solely for the uses and purposes of its lawful business; that it only ran its locomotives and cars over said railroad as requested and required to do so by the said fire brick company to transport its material and manufactured product to and from its plant.

It appears from the testimony that at the time the brick company built its railroad upon Water street it had been granted the right to do so by an ordinance of the city council, and that permission had also been granted to it by all the property owners on Water street, with the exception of the plaintiffs in this case, who had refused to sign permission for this purpose. Beyond that fact it does not appear that the plaintiffs ever made any other complaint until they brought this suit, which was instituted eighteen years after the building of the railroad and five years after the construction of the incline, which the testimony shows to have been the occasion of most of the damages which have been proved. The facts alleged in the answer filed by the Queens Run Fire Brick Company and by the Pennsylvania Railroad Company, to which allusion is made above, are substantially sustained by the evidence, and conceding for the purpose of argument that all of the allegations in the plaintiffs' bill, to which reference is above made, have also been proven, the first question to be decided is whether, under such a state of facts, a proper case has been made out for the intervention of a court of equity. It may be conceded that the city of Lock Haven could not grant to the Queens Run Fire Brick Company a legal right to build and operate its siding on Water street, and that if the plaintiffs had promptly made application to this court for an injunction to prevent such occupation of the street, in front of their premises without their permission, it would have been granted.

Have their laches been such as to estop them from making

such an application? The common-law maxim that wherever there is a right there is a remedy has never been adopted by courts of equity. It is a well-recognized principle that one may sleep upon his right until he lose it, and courts of equity will withhold their relief from those who have delayed the assertion of their claims for an unreasonable length of time: Power's Appeal, 125 Pa. 175; Willard v. Wood, 164 U. S. 502 (17 Sup. Ct. Repr. 176); Lansdale v. Smith, 106 U. S. 391 (1 Sup. Ct. Repr. 350); Sullivan v. Railroad Company, 94 U. S. 806; Speidel v. Henrici, 120 U. S. 377 (7 Sup. Ct. Repr. 610); Badger v. Badger, 69 U. S. 87. The defense of laches may be enforced in proper cases wherein the facts appearing call for it, whether they arise upon the bill and pleadings or upon the whole case as presented by the evidence. The court will often take notice of it, even though the objection is not made by the parties: Beach's Modern Eq. Prac., sec. 258. In the case of Bruner v. Finley, 187 Pa. 389, the court held that a delay of fifteen years on the part of the plaintiff in setting up a claim is gross laches, which properly defeats any right of recovery. In the case of Becker v. Railway Co., 188 Pa. 484; s. c., 195 Pa. 502, where a landowner promptly filed a bill in equity against a railway company to prevent the construction of its railway upon the turnpike road abutting on his property, but made no motion for a preliminary injunction until the road had been built and was in full operation, and took no further steps in the case for two years and a half and it appeared that the injury to the complainant was slight and might be readily compensated in damages, it was held that injunction would not be awarded because of the great inconvenience to the public and the serious loss it would inflict upon the company. To the same effect are the cases of Heilman v. Ry. Co., 180 Pa. 627; s. c., 175 Pa. 188, and Hinnershitz v. Traction Co., 206 Pa. 91. The latter case decides that where a railroad is projected over a public road without legal authority and the abutting property owners had notice of it and failed to make prompt objection thereto they are charged with constructive consent and equity will not interpose for their relief after a portion of the track has been constructed, the plaintiffs being barred by their laches from relief

in equity. In the case at bar the counsel for the defendant contends that the municipality had the right to authorize the building of the siding under the authority of Chicago Dock & Canal Company v. Garrity, 115 Ill. 155 (3 N. E. Repr. 448); People v. Blocki, 203 Ill. 363 (67 N. E. Repr. 809), and Clarke v. Blackmar, 47 N. Y. 150. While we cannot regard the reasoning in these cases as sound, it is not necessary to decide this question under our view of the present case. The cases cited above from our own appellate courts to our mind conclusively control the present case. It has never been held that an injunction is a matter of right. It will not issue when upon a broad consideration of the situation of all parties in interest, good conscience does not require it, nor where the benefit to the complainant is entirely disproportionate to the injury to the respondent. In Dilworth's Appeal, 91 Pa. 247, the court said: "It often becomes a grave question whether so great an injury would not be done to the community by enjoining the business that the complaining party should be left to his remedy at law." An injunction will not be awarded where the benefit to the complainant is entirely disproportionate to the injury to the respondent, even though the complainant may have a right to damages at law, Becker v. Ry. Co., 188 Pa. 484; nor where it will inflict greater injury than it will prevent. In such case the injured party will be left to his remedy at law: Robb v. Carnegie, 145 Pa. 324. Assuming in the present case that the defendant occupied the street in front of the plaintiffs' premises without legal authority and that by reason thereof the plaintiffs have suffered all of the damages alleged in their pleadings or shown by their testimony, we are of the opinion that the damages are of such character that they may be fully compensated in an action at law and that the delay of the plaintiffs in bringing this action convicts them of such laches as to defeat their right to apply for relief in equity. As was said in the case of Orne v. Fridenberg, 143 Pa. 487, "A Chancellor does not interfere by way of mandatory injunction even though the injury be clearly established, when there has been long continued delay in asserting the right, and the remedy exists at law."

The bill is, therefore, dismissed at the costs of the plaintiffs.

*Error assigned* was decree dismissing the bill.

*W. C. Kress*, for appellants.—In this case the road was constructed by a private corporation, without the right of eminent domain, in utter disregard of plaintiffs' rights and protests, and with full knowledge of the illegality of their acts. In such cases laches never bars a property owner from asserting his rights: Hoyt v. Hoyt, 2 Pa. C. C. Rep. 152; Westhaeffer v. Ry. Co., 163 Pa. 54; Fidelity Ins., etc., Co. v. Pass. Ry. Co., 6 Pa. Dist. Rep. 737.

The doctrine that where one stands by and sees another laying out money on property to which he, himself, has some claim or title, and does not give notice of it, he is equitably estopped from afterwards setting up such claim or title, does not apply to an act or encroachment on land, the title to which is equally well known or equally open to the notice of both parties: Schaidt v. Blaul, 5 Cent. Repr. 580; Thompson's Appeal, 126 Pa. 367, 374.

The rule that a chancellor will refuse to enjoin an act when a greater injury will result from granting than from refusing the injunction has no application where the act complained of is, in itself, as well as in its incidents, tortuous: Walters v. McElroy, 151 Pa. 549; Bigler v. Penna. Canal Co., 177 Pa. 28.

The substantial injury to a right of property will be redressed in equity where there is no adequate remedy at law, without regard to the inconvenience or damage the wrongdoer may sustain: Penna. Lead Co.'s Appeal, 96 Pa. 116; Price v. Grantz, 118 Pa. 402; Evans v. Fertilizing Co., 160 Pa. 209.

The fact that a public corporation operated the road at the request of a private corporation gave neither of them any rights in the street: Pittsburg v. R. R. Co., 205 Pa. 13; City of Chester v. B. & O. R. R. Co., 217 Pa. 402.

A manufacturing company cannot acquire by a lease from a railroad the right of eminent domain vested in the latter, so as to be enabled to construct and operate a railroad upon the

streets of a borough, even with the consent of the municipal authorities: Barker v. Hartman Steel Co., 129 Pa. 551. See also Attorney General v. Lombard and South St. Pass. Ry. Co., 10 Phila. 352. See Commonwealth v. Railroad Co., 27 Pa. 339; Penna. R. R. Co.'s App., 115 Pa. 514; Pittsburg, etc. R. R, Co. v. Railroad Co., 81* Pa. 104; 1 Redf. on Railways (3d ed.), 588; Commissioners v. Long, 1 Pars. 143; Smith v. Cummings, 2 Pars. 92; Bispham's Equity (2d ed.), 439; Story's Eq. Juris. (12th ed.), 924; High on Injunctions, sec. 2, pp. 500, 521; Canny v. Greene, 137 Mass. 64; Bunnell's App., 69 Pa. 59; Commonwealth v. Rush, 14 Pa. 186.

*H. T. Hall* and *Seth T. McCormick,* for appellee, were not heard, but in their printed brief said: The right to lay sidings to private establishments and to take the necessary land for that purpose is clearly within the constitutional power of the legislature to confer, because the public interest is thereby subserved, by reason of the increased facilities afforded for developing the resources of the state, and promoting the general wealth and prosperity of the community: Getz's Appeal, 10 W. N. C. 453; Potts v. P. & R. Ry. Co., 21 Montg. 142; Chicago Dock & Canal Co. v. Garrity, 115 Ill. 155 (3 N. E. Repr. 448); People ex rel. v. Blocki, 203 Ill. 363 (67 N. E. Repr. 809); Clarke v. Blackmar, 47 N. Y. 150.

A railroad on a public street if a nuisance at all is of necessity a public nuisance; and a bill in equity for an injunction against a public nuisance cannot be sustained by a private party, unless he shows a particular injury distinct from that which he suffers in common with the rest of the public. This we contend the appellants failed to show in this case: Bigelow v. Bridge Co., 14 Conn. 565; Black v. R. R. Co., 58 Pa. 249; Larimer, etc., Ry. Co. v. Ry. Co., 137 Pa. 533; Sparhawk v. Ry. Co., 54 Pa. 401; Rhymer v. Fretz, 206 Pa. 230; Scholl v. Emerich, 36 Pa. Superior Ct. 404; North R. R. Co. v. Traction Co., 205 Pa. 579; Struthers v. D. W. & P. Ry. Co., 87 Pa. 282; Jones v. R. R. Co., 151 Pa. 30.

The manufacturing plant of the appellee, with its railroad siding and other appurtenances, not being a nuisance per se, a

court of equity will not interfere until the appellants have established their rights by an action at law and the verdict of a jury: Huckenstein's App., 70 Pa. 102; McCaffrey's App., 105 Pa. 253; Richards's App., 57 Pa. 105; Grey v. R. R. Co., 1 Grant, 412; Coe v. Cotton & Woolen Mfg. Co., 37 N. H. 254.

An injunction is not of right, and will not be issued, when upon a broad consideration of the situation. of all parties in interest, good conscience does not require it, nor where the benefit to the complainant is entirely disproportionate to the injury to the respondent: Dilworth's App., 91 Pa. 247; Becker v. Ry. Co., 188 Pa. 484; Messner v. Ry. Co., 13 Pa. Superior Ct. 429; Richards's App., 57 Pa. 105; Wier's App., 74 Pa. 230; Farver v. Foundry Co., 24 Pa. Superior Ct. 579; Harvey v. Coal Co., 201 Pa. 63; Price v. Grantz, 118 Pa. 402; Rhodes v. Dunbar, 57 Pa. 274.

The complainants, with full knowledge of all the circumstances, having stood by and without objection permitted the expenditure by the appellee of large sums of money in both the original erection and subsequent enlargement and improvement of its plant, have been guilty of such laches in the bringing of the bill in this case as would bar their right to ask of a court of equity a decree in their favor: Becker v. Ry. Co., 188 Pa. 484; Heilman v. Ry. Co., 180 Pa. 627; Hinnershitz v. Traction Co., 206 Pa. 91; Orne v. Fridenberg, 143 Pa. 487; Fidelity Ins., etc., Co.'s Appeal, 115 Pa. 157; Golmer v. Illenberger, 52 Pitts L. J. 196; Brown v. Howell, 8 North, 181; Powers's App., 125 Pa. 175; Bruner v. Finley, 187 Pa. 389; Willard v. Wood, 164 U. S. 502 (17 Sup. Ct. Repr. 176); Sullivan v. R. R. Co., 94 U. S. 806; Lansdale v. Smith, 106 U. S. 391 (1 Sup. Ct. Repr. 350); Badger v. Badger, 69 U. S. 72; Speidel v. Henrici, 120 U. S. 377 (7 Sup. Ct. Repr. 610).

*T. C. Hipple,* for Pennsylvania Railroad Company, appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 19, 1909:

The exhaustive opinion filed by the learned judge of the court below sufficiently vindicates his conclusions both of fact and of law. He has correctly found the facts from the evi-

dence, and his conclusions of law are amply supported by the numerous authorities he cites. The decree, therefore, may well be affirmed on his opinion.

In concluding the opinion, the court correctly says: "Assuming in the present case that the defendant occupied the street in front of the plaintiffs' premises without legal authority and that by reason thereof the plaintiffs have suffered all of the damages alleged in their pleadings or shown by their testimony, we are of the opinion that the damages are of such character that they may be fully compensated in an action at law, and that the delay of the plaintiffs in bringing this action convicts them of such laches as to defeat their right to apply for relief in equity." The facts of the case clearly warranted the chancellor in holding that the laches of the plaintiffs barred a recovery in equity, and remanded them to an action at law for any injury they may have sustained by the conduct of the defendants. The fire brick company erected its plant and began operation in 1887, and the plant has been in continuous operation ever since. The railroad siding was constructed in 1890 and has been used continuously since by the Pennsylvania Railroad Company for hauling coal to, and the manufactured product from, the fire brick plant, and since 1900, has also been used in transporting fire clay to the plant. The capacity of the brick plant is about 40,000 bricks per day, and 200 men are employed to operate it. In 1900 the fire brick company constructed an additional track on its own land at the eastern end of the railroad, which was elevated eighteen or twenty feet above the surface of the ground so that the fire clay used in the plant might be carried by the cars into the works. In 1903 the company expended $60,000 in enlarging the plant, and remodeled it so as to make the operation of the machinery noiseless and free from vibration. The plaintiffs knew that the plant was being remodeled with an increased capacity but made no objection and did not attempt to restrain the operation of the railroad in front of their premises. So far as the evidence discloses, the plaintiffs did not object to the defendant laying its railroad in front of their premises or to the construction of the additional track until it filed this

bill in November, 1905. It is true, that when the city council and the other property owners on Water street granted permission to the fire brick company to build its railroad on the street, the plaintiffs refused to give their consent, but they did not object or make any attempt whatever, prior to filing this bill, to restrain the construction of the road. They saw the road built in front of their premises in 1890; they saw it operated for fifteen years; they saw the additional track constructed in 1900; they saw the fire brick company's plant remodeled at great expense and knew it could only be operated by use of the railroad; and these several acts were all done with the knowledge of the plaintiffs and, so far as the record discloses, without a single word of objection by them. In addition to these facts, the plaintiffs in 1900 remodeled and enlarged their dwelling house and finished it in modern style without making any objection to the construction or operation of the fire brick company's railroad.

As pointed out in the opinion of the learned trial judge, the plaintiffs are clearly guilty of laches under all the authorities. The facts of the case clearly warranted the judge in dismissing the bill on this ground. The counsel for the plaintiffs concede that "the plaintiffs here knew their rights and stood upon them from the first." There was no deception or fraud practiced by the defendant, and the plaintiffs were cognizant of every move made by the fire brick company in the construction of the railroad in front of their premises. They knew all the facts and, knowing their rights as they admit, it was their duty to act promptly. There is no sufficient excuse given in the bill for the failure of the plaintiffs to assert their rights at an earlier date than 1905 when they filed this bill. Neither was there anything shown upon the trial of the cause that justified the plaintiffs in delaying their objection to the construction of the railroad until they instituted these proceedings. So far as the record discloses, there is no justification whatever for the conduct of the plaintiffs in permitting, without objection, the construction of the road, its subsequent operation for so many years, and the large expenditure of money on a plant which could only be available by use of the railroad. A party guilty

of such conduct cannot secure relief in a court of equity. Vigilantibus, non dormientibus, servit lex. The plaintiffs have slept upon their rights which concededly they knew, and a chancellor will not aid them to the great prejudice of another party whose equities are at least equal to those of the plaintiffs. As said in Powers's Appeal, 125 Pa. 175, 186, the maxim of the common law, that wherever there is a right there is a remedy for its infraction has never been adopted by courts of equity. Hence, he who sleeps upon his rights may awake to find that his remedy for their enforcement in a court of equity has vanished.

The assignments of error are overruled, and the decree is affirmed.