## CIRCUIT COURT OF BALTIMORE CITY.

Filed May 31, 1918.

McHENRY HOWARD AND OTHERS
VS.
WESTERN MARYLAND RAILROAD COMPANY AND OTHERS.

*Charles Morris Howard* and *Frank E. Welsh, Jr.,* for plaintiffs.

*George R. Gaither* and *George P. Bagby* for defendants.

AMBLER, J.—

The bill of complaint in this case asks a mandatory injunction requiring the defendants:

(1) To remove from Buren street, south of Falls street, certain tracks, more or less, recently laid in addition to the two tracks which have been there for many years;

(2) To remove from Liberty alley, south of Falls street, the tracks, fence and engine house, which are alleged to destroy its use as a public highway.

The plaintiffs claim the bed of Buren street and Liberty alley subject only to the public right of way, which they assert John Edgar Howard, Josias Pennington and James Ogleby retained in common when they sold or partitioned among themselves certain lots abutting thereon and forming part of the old tract so long and of late years so vaguely known by the name of "Cole's Harbour or Todd's Range." Much of the testimony was devoted to the true location of a line that is described in one of the old deeds as the "north 41 degrees west 33½ perches line of the writ of *ad quod damnum* executed for Edward Fell in 1760," and counsel were considerate enough to remind the court that the "writ of *ad quod damnum*" was somewhat in the nature of the statutory condemnation proceeding by which it has been superseded in modern practice. Mr. Sutton, the surveyor, called as a witness by the plaintiffs, testifies that this north 41 degrees west line coincided exactly with the line of the southwest side of Buren street south of the "bend." On the other hand, Mr. Coonan, the surveyor called by the defendants, states that in his opinion "sixteen feet, three inches of the bed of Buren street from Front street to the bend lie within the title of Thomas Sligh and James French," a title holder than that conveyed by Job Garretson to John Eager Howard and others.

When two surveyors, both well known and of good standing in their profession, differ as to the correct location of a line that for many years has been obliterated by streets, buildings and other charges incident to the growth of the city, and each gives logical reasons for the view that he maintains, it is not to be wondered that the question is involved in more or less doubt and perplexity even for an experienced conveyancer or examiner of titles. One fact, however, seems to be reasonably clear, and that is that this part of Buren street was opened more than a hundred years ago,

and there is no suggestion of any change in the line of its southwest side since that time.

From the deed from Job Garretson to John Eager Howard and others, dated January 21, 1804, and recorded in W. G. No. 80, f. 586; the deed of April 26, 1905 (W. G. No. 85, f. 478), by which these grantees reconveyed to their grantor a small part of the same land in exchange for another lot; and from the deeds of December 31, 1905, with plat annexed (W. G. No. 88, f. 243; No. 88, f. 612, and No. 90, f. 352), by which Messrs. Howard, Pennington and Ogleby made partition of at least part of the land acquired from Job Garretson, it seems equally clear that shortly after their purchase these gentlemen proceeded to lay out streets through this land and subdivide it into building lots. For instance, the lot reconveyed to Job Garretson (W. G. No. 85, f. 478) is described as follows:

"Beginning for the said piece or parcel of land hereby conveyed in exchange as aforesaid at a stone placed in the ground at the southwesternmost intersection of two streets laid out by said John E. Howard, Josias Pennington and James Ogleby through their ground, the one of said streets called Falls street and the other called Mill street; thence running from the said stone or intersection bounding on Mill street southerly eighty-two feet to the north forty-one degrees west thirty-six perches line of that part of said tract, on or about the eighth day of June, seventeen hundred and fifty-nine, conveyed by Thomas Sligh to James French; thence northwesterly ninety-seven feet to the south side of Falls street to the place of beginning."

The plat annexed to the partition deed shows that the second line of the triangle thus conveyed is a prolongation of the southwest side of Buren street. In 1805, when these streets were laid out, "Cole's Harbour or Todd's Range" was a well-known tract in what was still open country. There had been no encroachment of the city to destroy or radically change old landmarks, and difficulty in locating exactly any given line must have been far less serious than it is now.

Without hesitation, I accept Mr. Sutton's view, and conclude that by the deed from Job Garretson (W. G. No. 80, f. 586) the grantees acquired a good title in fee simple to the bed of Buren

street as well as to the bed of Liberty alley.

This brings us to the question whether the street beds were included or excluded when the tenants in common made partition. Here it is well to observe that Buren street north of the bend was originally called Mill street. The plat above mentioned shows that Mill and Buren were originally laid out and regarded as two distinct streets that came together and united at the bend a short distance south of Falls street. It may be observed, too, that lately the name of Falls street has been changed to Terminal.

The partition deed to John Eager Howard (W. G. No. 88, f. 612) conveys several lots, some of which are north and others south of Falls street, and all of those east of Mill street are uniformly described as *bounding on the east side* of Mill street, and thence running westerly *to* Liberty alley, and thence southerly *bounding on Liberty alley*, etc., etc. Those south of Falls street are all included in one description as "beginning at the southeast corner of intersection of Mill and Falls streets, and running thence easterly bounding *on the south side* of Mill street 88 feet 3 inches *to* Liberty alley; thence southerly *bounding on said alley* 194 feet *to* Buren street; thence northwesterly *bounding on the last-mentioned* street 134 feet 6 inches to Mill street, and thence bounding on Mill street to the place of beginning.

In the same way the lots conveyed to Ogleby (W. G. No. 88, folio 243) and to Pennington (W. G. No. 90, folio 352) are described respectively as bounding on the *east side* of Mill street or *the west* side of Constitution street, as the case may be, or on either the north or south side of Falls street; but in every instance where either Liberty alley or Buren street is mentioned, the lot is described as running *to* the alley or street and thence bounding *on* the alley or street, without a single reference to the *side*.

It is difficult to conceive how a different intention in regard to the beds of the three streets first named from the intention in regard to Liberty alley and Buren street could have been more clearly expressed than by this discrimination in the terms employed in the same deed. According to the rule of construction so often laid down by our Court of Appeals, I take it, the grant

in each instance was limited to the *side* of Mill, Falls and Constitution streets, respectively, and extended in each instance to the *centre* of Liberty alley and of Buren street respectively. Hunt vs. Brown, 76 Md. 481; Gump vs. Sibley, 79 Md. 166; Rieman vs. B. & O. R. R., 81 Md. 68.

Subsequently the lots so conveyed in severalty were leased by the respective owners for terms of ninety-nine years renewable, subject to annual rents; but it cannot be necessary to trace the devolution of title to either the ground rents or the leasehold interests thus created, for the plaintiffs claim only the undivided interests in the beds of the streets and of the alley which Messrs. Howard, Pennington and Ogleby were supposed to retain in common after partition of the abutting lots. If I am right in the conclusion that the plaintiffs have no title to the bed of Liberty alley or other interest in it different from that of the general public, they cannot in this proceeding require the removal of any obstruction placed there, whether with or without permission of the Mayor and City Council. The same result follows as to the northeast half of so much of Buren street as lies south of the "bend".

This leaves for consideration only the additional tracks laid in the bed of Mill street south of Falls street and in the southwest half of Buren street over and beyond the two tracks which have been there for many years. It should be noted that the name of Mill street has been abandoned and for some years the whole of this street has been called Buren.

The defendants' maps of 1888 and of 1911 indicate that between those dates little, if any, change of tracks was made in this locality; and also that as long ago as 1888 the number of tracks or switches crossing the southern half of Buren street south of the bend must have impeded, if they did not altogether prevent, the passage of vehicles along this "highway" to any street or outlet south of Falls street.

Beginning about 1912, the defendants undertook to enlarge and improve the terminal system, and in the course of this work either shifted some of the switches or put in new "leads" so as to occupy more of the bed of Buren street between the bend and Falls street, as shown by the latest map,

which bears no date, but, as I understand, was recently prepared for the purpose of presenting conditions as they now exist. As to existing conditions the undisputed testimony (Mr. Sutton, p. 8) is:

"So far as the appearance of the street is concerned that has been entirely destroyed south of Falls street—south of Terminal street. The whole situation south of Terminal street is just the appearance of a terminal yard. The construction of the tracks is T rail and cross tie construction with no apparent effort to make any crossing, such as would be needed for use by vehicles crossing them, and there is no paving now in the bed of Buren street.

The bill alleges, and the answer admits, that Buren street is one of the public highways of the city; but this can only mean that it has never been formally "closed" by ordinance. Unquestionably, its present use is not the public easement to which the land was made subject when the street was opened, and the defendants could not, without the consent of the reversioners, impose a new burden above and beyond the original servitude. For all practical purposes, the bed of the street is now appropriated by the defendants to their own exclusive use, and there can be no doubt that if seasonable objection had been made a court of equity would have restrained such taking of private property without just compensation. Am. Tel. Co. vs. Pearce, 71 Md. 537; Phipps vs. W. M. R. R., 66 Md. 319; Poole vs. Falls Road Ry. Co., 88 Md. 533. 537-8; Long vs. Ragan, 94 Md. 462; Shipley vs. W. M. R. R., 99 Md. 133.

But, say the defendants, the plaintiffs and those under whom the plaintiffs claim have slept on their rights too long to come into a court of equity and ask relief by injunction. They insist that the tracks on Buren street have been laid substantially as they are now for more than thirty years and that any changes made in 1913 were finished more than two years before this suit was brought or any notice of objection given, and were part of a general plan for the improvement of the terminal system at the cost of over a half million dollars; that the plaintiff stood by and saw the work going on, without a word of objection until the whole was completed; and any benefit to the plaintiffs from hav-

ing the tracks removed now would be inconsiderable in comparison with the loss and damage that this would cause the defendants. In support of the contention that under such circumstances an injunction should not issue, they rely on the following cases: B. & O. R. R. vs. Strauss, 37 Md. 237; Spencer vs. Falls Turnpike Co., 70 Md. 136; Maryland Hotel Co. vs. Engraving Co., 92 Md. 710; McDowell vs. Biddison, 120 Md. 118; Good vs. Queens Run Co., 224 Pa. 496; Smith vs. Rowland, 243 Pa. 306.

So far, however, from contending that because the application for an injunction is too late, the plaintiffs should have no redress whatever for any injury that they may have suffered, the defendants urge, as an additional objection to this proceeding, that the plaintiffs have a full, complete and adequate remedy at law. If Buren street were formally closed, unquestionably the plaintiffs' right of possession would be fully restored and they could maintain either ejectment or trespass for any lawful interference with their property (Phipps vs. W. M. R. R., 66 Md. 319, 323). If this portion of Buren street is still to be deemed a public highway, it is equally unquestionable that the existence of a highway does not divest the reversionary owner of the property in the soil. Our Court of Appeals has repeatedly declared that, subject to the easement in the public, the owner of a roadbed has full control and dominion over the land and can recover it in ejectment or bring an action for trespass against any one who "infringes upon the proprietary rights of the owner of the soil in a manner not included in the use of the easement as a public highway." Thomas vs. Ford, 65 Md. 346, 355; C. & P. Tel. Co. vs. Mackenzie, 74 Md. 30, 47-8; Canton Co. vs. B. & O. R. R., 79 Md. 424, 432.

A further obstacle to the relief sought in this cause is that, from long occupancy, the defendants may have acquired the right to maintain all or a large portion of the tracks on Buren street in addition to the two main tracks which the bill of complaint concedes, and that involves a question of title that this court could not well undertake to determine. Clayton vs. Shoemaker, 67 Md. 216; Gulick vs. Fisher, 92 Md. 353, 362-3; Bernei vs. Sappington, 102 Md. 186, 190; Oberheim vs. Reeside, 116 Md. 265, 274.

In my opinion, the case does not warrant the issue of an injunction of this stage, but the bill should not be immediately dismissed, for while the plaintiffs may by an action of trespass establish their title and obtain reparation for any damage already suffered, they could not by that means secure immunity from or compensation for any continuing or repeated trespass. I will accordingly sign a decree refusing an injunction at this time, but retaining the bill for a reasonable time, until the parties either agree upon a settlement or have their rights definitely ascertained by some proceeding in a court of law.