Moyerman, Appellant, *v.* Glanzberg.

·Argued November 18, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused February 10, 1958.

*Roland J. Christy,* with him *Samuel Moyerman,* in propria persona, for appellants.

*Michael H. Egnal,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 16, 1958:

On August 28, 1953, Samuel Moyerman and his wife, the appellants, conveyed to Jules Glanzberg and his wife a vacant lot in Cheltenham Township, Montgomery County. This lot had a frontage of 80.38 feet, a depth of 175 feet and a rear width of 58.89 feet. At the same time the appellants granted to the Glanzbergs an easement or right of way over a 25 foot wide driveway which ran the length of the westerly side of the lot. The title to the driveway was retained by the appellants. Apparently the Glanzbergs were acting as straw parties in this transaction and they conveyed title to the lot and rights to the easement to Theodore I. Goodman,[1] the appellee in both these appeals.

On September 10, 1953, the appellee applied to the township building inspector for a permit to erect a dwelling on this lot and in his application incorrectly stated that the lot had a frontage of 105.38 feet and a rear width of 80.74 feet. From that misstatement of the dimensions of the lot arises the present controversy.

A permit to build was granted to the appellee and a single family dwelling was constructed. Had the lot dimensions actually been as represented in appellee's application for a building permit, the dwelling as located could not have been the subject of objection. However, the lot was actually 25 feet less in frontage and 21.85 feet less in rear width. As a result the completed dwelling—located in accordance with the incorrect dimensions—was built so close to the boundary —between the westerly side of the lot and the driveway—that for a distance of approximately 10 feet it encroached on the driveway to a depth of from 14 to 16 inches. In addition to this admitted encroachment, the location of the dwelling so close to the lot boundary violates §406 of the Cheltenham Township Zoning Ordi-

---

[1] Goodman is the sole appellee in both appeals.

nance of 1929 which requires that dwellings built in "A" Residence Zoning Districts have two side yards, "one on each side of the main building, together having an aggregate width of not less than 30 feet but neither having a width of less than 10 feet".

The appellee, contending that he had become aware of this situation only after the dwelling had been substantially completed, applied to the Zoning Board of Adjustment of Cheltenham Township for the grant of a variance from the side yard requirements of the ordinance. After a hearing, at which appellants and their counsel appeared and strenuously objected, the Board granted the variance. At about the same time the appellants filed a complaint in equity seeking an injunction against the appellee's continued encroachment upon the easement together with damages therefor. The appellants appealed from the decision of the Board of Adjustment and the Court of Common Pleas of Montgomery County heard both that appeal and the equity action at the same time.

Following the hearing in the equity action the chancellor filed an adjudication in which he found, in substance: (1) that the appellee's encroachment upon the easement, although indisputably a continuing trespass, was neither wilful nor intentional but was, rather, the result of a mistake on the appellee's part regarding the quantum of land he had purchased; (2) that the appellee's mistake was attributable to his innocent belief that *he* was the owner of the driveway and that *he* had granted the appellants the easement thereover whereas exactly the converse was true; (3) that the appellants were not guilty of laches in failing to initiate their action before the construction had been substantially completed because the encroachment was too slight to be readily discernible and because building materials and other debris in the area tended to

obscure it; (4) that the appellants did, however, know that the appellee was violating the zoning ordinance but took no action until the dwelling had been practically completed; (5) that the encroachment did not materially interfere with the use of the easement. The chancellor thereupon concluded that "the granting of an injunction in this case would be inequitable, doing more harm than the wrong sought to be redressed"; accordingly, he dismissed the prayer for an injunction and certified the case to the law side of the Court for the assessment of damages resulting from the permanent trespass to the appellants' land.

The appellants filed exceptions to the chancellor's adjudication and decree nisi and, after a hearing, the court en banc dismissed all the exceptions save one, holding, in accordance with the appellants' contention, that the chancellor had erred in certifying the question of damages to the law side because equity, having once assumed jurisdiction in the injunction action, should determine all questions arising under the pleadings.[2]

The rule governing our scope of review is well established: a chancellor's findings have the force and effect of a jury's verdict when affirmed by a court en banc and ordinarily will not be disturbed upon appeal; such findings will not be considered conclusive, however, when the record affords them inadequate evidentiary support or when they have been premised upon erroneous inferences and deductions drawn by the chancellor from the evidence: *Commonwealth Trust Company, Admr. v. Szabo et al.*, 391 Pa. 272, 138 A. 2nd 85, and cases therein cited.

It is, therefore, our duty to examine this record to ascertain whether the chancellor's findings of fact and

---

[2] *Wortex Mills v. Textile Workers Union of America*, 380 Pa. 3, 11, 109 A. 2d 815, and cases therein cited.

conclusions of law are supported by adequate evidence and based upon inferences properly drawn therefrom. Such an examination readily discloses adequate evidentiary support for the chancellor's findings that appellants were not guilty of laches, that, even though appellants knew of the zoning ordinance violation, they took no action until the dwelling was practically completed and that the encroachment did not materially interfere with the use of the easement. The chancellor's finding of an absence of laches is not inconsistent with the finding that appellants had notice of a zoning ordinance violation. The husband-appellant was present on several occasions while the dwelling was under construction and had sold several lots in the area. That he did not notice the encroachment is understandable; the amount of debris inevitably surrounding a dwelling in the course of construction could well have hidden an encroachment as slight as the one here involved. On the other hand, the juxtaposition of the location of the dwelling to the lot boundary would have rendered obvious a violation of the side yard requirement of the zoning ordinance. Moreover, the evidence is clear that the encroachment does not materially affect the use of the easement. The cartway of the 25 foot driveway is approximately 18 feet wide and on each side is a concrete gutter; the encroachment thereon of slightly more than 1 foot could not seriously affect the purpose for which the easement was intended, i.e. ingress and egress to a lot owned by the appellants which is located directly to the rear of the lot in question.

Appellants, in their argument before this Court and in their exceptions to the chancellor's adjudication, stress as their basic contention that the chancellor and the court en banc erred in determining that the encroachment was not wilfully and intentionally com-

mitted. We are in accord with appellants' view that the crux of this case is the validity of the court's determination in this respect.

In *Kern v. Greensweig,* 125 Pa. Superior Ct. 430, 436, 190 A. 182, the Court stated: " 'An injunction is not of right and the chancellor is not bound to make a decree which will do far more mischief and work greater injury than the loss he is asked to redress.' 'A suitor must not only appear in a court of equity with clean hands, but he must come with reasonable promptness, in good faith, and with a just and equitable demand. . . . If an injunction is prayed for where upon a consideration of the whole case it ought not in good conscience to issue, a mere legal right in the plaintiff will not move the chancellor': Power's Appeal, 125 Pa. 175, 186, 17 A. 254." See also: *Baugh v. Bergdoll,* 227 Pa. 420, 422, 76 A. 207. Upon that doctrine the lower court placed reliance, holding that the granting of an injunction in this case which would compel appellee to tear down a portion of a completely constructed dwelling would be creative of more harm to the appellee than of benefit to appellants. With that determination we are in agreement.

However, despite that doctrine, the Court below would have had no choice but to grant the injunction if it had found that the appellee had deliberately and wilfully built upon the appellants' property or if it believed that he had intentionally taken a chance. This rule was well stated in *Ventresca v. Ventresca,* 182 Pa. Superior Ct. 248, 253, 126 A. 2d 515, wherein it was said: "Where the defendant's act is tortious or in bad faith, or where he intentionally takes a chance, injunctive relief should be granted:" See also: *Kanefsky v. Dratch Construction Co.,* 376 Pa. 188, 196, 101 A. 2d 923; *Baugh v. Bergdoll,* supra; *Bright v. Allan,* 203 Pa. 394, 53 A. 251.

The instant record discloses that the appellee acquired title to only a portion of the lot in question as it had existed in the subdivision as originally laid out and subsequently approved by the Township Commissioners in 1946. At that time the lot was represented as having a frontage of 105.38 feet subject to a driveway of 18 feet. Appellants' subsequent reduction of the width of the lot was neither approved by nor brought to the attention of the Township Commissioners. The 25-foot driveway reserved by the appellants when they sold the lot to the Glanzbergs consisted of the original 18-foot driveway with gutter plus a 7-foot strip of land taken from the original building lot. It is on this additional 7-foot strip that the appellee's dwelling encroaches.

The appellee was given a plan at settlement which showed the frontage of the lot as 105.38 feet with a 25-foot driveway. When appellee applied for a building permit he examined the county plan which showed a frontage of 105.38 feet. Taking into consideration the facts that both plans examined by the appellee showed the frontage of the lot as 105.38 feet and that appellants had increased the width of the driveway from 18 feet to 25 feet—thus reducing the area of the lot which appellee could use for building—we have "confusion worse confounded": under such circumstances we cannot say that there was no evidence to support the chancellor's inference that the appellee incorrectly assumed that his lot had a frontage of 105.38 feet and that it was appellants who had the easement in 25 feet of the frontage. In such a situation the chancellor did not err, on the basis of this inference, in finding that the encroachment was the result of an unintentional mistake rather than a wilful and intentional trespass. In the absence of a wilful and intentional encroachment, since the inconven-

ience suffered by appellants is slight in comparison to the extreme hardship which the granting of an injunction would impose upon appellee, the action of the court below in dismissing the injunction request should be affirmed.

Appellants further assert—for the first time upon this appeal—that the easement in favor of the appellee terminated when he defied the appellants, the owners of the servient tenement, and that this court should order the easement forfeited. In view of our affirmance of the chancellor's finding that there was no defiance by the appellee, but merely an innocent mistake of fact, it is unnecessary to discuss this contention.

The final contention made by the appellants in the equity appeal is that the court below erred in ordering a separate hearing for the assessment of damages. The husband-appellant testified that the remaining lot owned by the appellants, because of the appellee's trespass and violation of the zoning ordinance, "ought to bring five thousand dollars less as a result of not having an opening of twenty-five plus ten, thirty-five feet on this side". Appellants argue that if they are to be limited to damages, they should be awarded $5,000 because there is no evidence in the record to rebut this testimony. We find no merit in this contention. The appellants have the burden of proving the damages they have suffered and the uncertain and equivocal testimony quoted above is insufficient to satisfy this burden; any finding based thereon or inference drawn therefrom would have been mere conjecture upon the part of the chancellor and would have constituted error. Cf: *Mrahunec v. Fausti*, 385 Pa. 64, 69, 121 A. 2d 878, and cases therein cited. We find no error in this respect made by the learned Court below.

In the zoning appeal the court below took no testimony, concluding that there had been a full and com-

plete hearing before the Zoning Board of Adjustment at which both parties gave testimony and were represented by counsel, the record in the equity case contained no relevant testimony which had not been previously given in the hearing before the Board of Adjustment, and there was little or no dispute as to the facts. Consequently, the court below correctly held that the only question properly before it was whether the Board of Adjustment had committed an error of law or flagrant abuse of its discretion in granting the variance: *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 51, 131 A. 2d 587.

Examination of the testimony taken by the Board of Adjustment leads us irresistibly to the conclusion that the Board correctly recognized and applied the proper legal tests in determining that the appellee was entitled to a variance from the literal terms of the side yard provisions of the zoning ordinance. In *Richman v. Zoning Board of Adjustment,* supra, 259, we said: "The sole justification for the grant of a variance is that a strict application of the terms of the zoning statute will result in an 'unnecessary hardship', and, even then, the variance can be granted only if 'the spirit of the ordinance shall be observed; the public health; the public safety; and the general welfare secured; and substantial justice done.[3] He who seeks a

---

[3] Citing: *Junge's Appeal (No. 1),* 89 Pa. Superior Ct. 543, 546; *Mack Zoning Appeal,* 384 Pa. 586, 589, 122 A. 2d 48; *Peirce Appeal,* 384 Pa. 100, 106, 119 A. 2d 506; *Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa. 497, 503, 504, 109 A. 2d 147; *Dooling's Windy Hill, Inc. v. Springfield Township Zoning Board of Adjustment,* 371 Pa. 290, 295, 89 A. 2d 505; *Elkins Park Improvement Association Zoning Case,* 361 Pa. 322, 326, 64 A. 2d 783; *Crawford Zoning Case,* 358 Pa. 636, 641, 57 A. 2d 862.

variance has the burden of proving justification for its grant.[4] The 'hardship' which must be proven must be an 'unnecessary', not a 'mere' hardship,[5] as well as 'unique or peculiar to [the property involved] as distinguished from the impact of the zoning regulations on the entire district'.[6] The fact that an increase or decrease in value will result from the grant or refusal of a variance will not, standing alone, constitute a sufficient hardship."[7]

The full and comprehensive decision of the Board of Adjustment, ably buttressed by well-reasoned findings of fact, demonstrates clearly that the Board was fully cognizant of these principles. In summarizing its findings, the Board stated: "Since the [appellee's] property is located along a 25-foot driveway this driveway can never be obstructed by buildings of any kind but must always remain open and clear. There, in fact, exists between his existing house and the westerly edge of the driveway which separates the driveway from the adjoining property owner more than 23 feet of open ground. The purpose of the Zoning Ordinance in providing side yards is to protect the property owners from a hazard of fire and to provide light and air. This protection exists as far as the [appellee's] property is concerned because there is 38 feet separating [appellee's] dwelling and the dwelling located upon the property abutting on the west. Compelling the

---

[4] Citing: *Baronoff v. Zoning Board of Adjustment*, 385 Pa. 110, 115, 122 A. 2d 65; *Volpe Appeal*, supra, 378.

[5] Citing: *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 484, 41 A. 2d 744; *Volpe Appeal*, supra, 378; *Ventresca v. Exley (et al.)*, 358 Pa. 98, 100, 56 A. 2d 210; *Jennings' Appeal*, 330 Pa. 154, 160, 198 A. 621; *Valicenti's Appeal*, 298 Pa. 276, 283, 148 A. 308; *Kerr's Appeal*, 294 Pa. 246, 253, 144 A. 81.

[6] Citing: *Michener Appeal*, 382 Pa. 401, 406, 407, 115 A. 2d 367.

[7] Citing: *Pincus v. Power*, 376 Pa. 175, 181, 101 A. 2d 914; *Mutual Supply Company Appeal*, 366 Pa. 424, 428, 77 A. 2d 612; *Reininger Zoning Case*, 362 Pa. 116, 118, 66 A. 2d 225.

[appellee] to locate his building a further 8 feet to the east would afford no more protection to the public and would have no relation to the general welfare and safety of the community. It is the Board's opinion that even though the [appellee] had not constructed a dwelling upon his property but were appearing before the Board for the first time, with a plot plan requesting the Board to permit him to construct a building up to the 25-foot driveway, that under those conditions there exists sufficient hardships to permit the Board to grant a variance. It would be a hardship which is unnecessary and of no benefit to the public to disregard entirely the fact that there is a 25-foot open space between the petitioner's property and the abutting property."

We are in full accord with this conclusion of the Board of Adjustment. It is hard to imagine a situation in which the requisite "unnecessary" hardship could be more clearly depicted than it was in the instant case. It is manifestly clear that the Board of Adjustment, had it refused to grant the variance under the instant circumstances, would have been guilty of a flagrant abuse of discretion when, as here, there is a distance of some 38 feet separating the appellee's dwelling from the dwelling next door and the grant of a variance could cause no conceivable detriment to the public health, safety and general welfare.

The appellants' main contention upon this appeal was clearly defined and answered by the court en banc in its opinion dismissing the appellants' exceptions to the decision of the hearing judge. The court en banc stated: "The fundamental difference between the [appellants] and the findings of the board and the hearing judge is that the [appellants] contend that [appellee] was guilty of a wilful and intentional violation of the Zoning Ordinance, while the Board of

Adjustment and the hearing judge found that the violation was unintentional."

Appellants are clearly correct in contending that a hardship which has been wilfully and intentionally created cannot be considered an "unnecessary" hardship so as to justify the grant of a variance. Every conceivable connotation of the word "unnecessary" precludes such a consideration. It nevertheless remains true that the Board of Adjustment, the agency which both saw and heard the witnesses and in the best position to pass upon their credibility, fully accepted the appellee's explanation that he believed, when he applied for his building permit and when he built his building, that he held title to the 25 foot wide driveway and that he consequently was complying with the side yard requirement of the zoning ordinance. We see no need to re-examine the testimony at length. The record contains sufficient evidence to support the findings of the Board of Adjustment regarding the appellee's mistake as to the boundaries of his property. It necessarily follows that the Board of Adjustment committed no clear error of law or abuse of discretion which would compel us to reverse the decree of the court below affirming its grant of a variance.

The decrees in both appeals are affirmed. Each of the parties to pay its own costs.