## Robinson *v.* Alston, Appellant.

Argued November 21, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

reargument refused February 13, 1964.

*Ransome A. Kley,* for appellant.

*Edward I. Weisberg,* with him *David N. Feldman,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1964:

Henry A. Robinson, some 40 years of age, the plaintiff in this case, entered an apartment house, owned by Estelle Alston, the defendant, and while in the process of leaving, fell down some steps, incurring injuries. He brought an action of trespass against the owner of the property. At the termination of the plaintiff's case the defendant moved for a nonsuit which was refused, the case having been heard nonjury by Judge VICTOR BLANC of the Court of Common Pleas No. 6 of Philadelphia County, who entered a verdict in the sum of $6,999 in favor of the plaintiff. The defendant moved for judgment n.o.v., which motion was refused and she has appealed to this court.

The appellant argues that the plaintiff failed to make out a case of negligence and at the same time convicted himself of contributory negligence. The plaintiff testified that as he was descending the stairway from the third floor, a nail protruding from the second tread caught his heel, causing him to fall. He said that the hallway was "kind of dim-looking," undoubtedly meaning dimly lighted. The tenant, Miss Hazel Hunter, whom he had visited, testified that the hallway "wasn't too dark to walk and it wasn't too light." She said that she had lived in the apartment house for nine months prior to the accident and had informed the landlady of the dangerous condition of

the steps. When asked what it was which caused the plaintiff to fall she replied: "Well, the nail was coming out, it was coming up on the—the shiny piece was kind of sticking up some . . . Either the rubber mat or a nail, or this aluminum edge on it."

The defendant testified that the steps were in excellent condition and denied that she had ever been notified by Miss Hunter to the contrary. The issue in the case was strictly one of fact, and the disposition of the appeal does not require a long opinion. Defendant's counsel, in his brief, argues the facts at great length, expatiating considerably on the question of the credibility of the witnesses, but there is nothing in the record which would establish that the trial judge abused his discretion in reaching the conclusions which he specified in his opinion.

At one point in his brief, defendant's counsel states that the plaintiff "could not read good and spells badly." What could be the possible relevancy of this statement? Certainly it does not require a college education to fall down steps which are dimly lighted and therefore do not reveal the lurking nail which catches a visitor's shoe and trips him.

The plaintiff fell on April 28, 1957, but the defendant was not informed of the accident until September 27, 1957. The defendant sees in this failure to be notified a fatal impediment in the plaintiff's case. Her counsel characterizes the plaintiff's failure to inform the defendant of his injury on her property a "withholding of evidence", or even a "destruction of evidence," stating that "Every inference will be indulged against a party who destroys papers material to the case. Every presumption will be adopted against a litigant who suppresses evidence that would illustrate his case." In supporting this statement he brings into play the formidable artillery of: "Omnia praesumuntur contra spoliatorem."

But there was no destruction of "material papers" in this case, nor was there any evidence that the plaintiff schemed to hide from the defendant what had befallen him. It can legitimately be argued that his failure to notify the defendant of the accident is evidence that the accident did not happen as described by him, but there would be no warrant in law for the fact-finding tribunal to accept mandatorily the presumption that such silence amounted to suppression of evidence.

The defendant argues further that Hazel Hunter, the plaintiff's witness, was not to be believed because she was unfriendly to the defendant, that she did not pay her rent on time, that she complained to the Rent Commission and that she was levied on by a constable for nonpayment of rent. All this could be true and it still would not, ipso facto, destroy her as a witness. One can be unfriendly and still tell the truth. It is for the fact-finding tribunal to weigh the state of animus of the witness, if any, against the instinct to tell the truth, and determine if the former outweighs the latter to such an extent that fidelity to fact is impossible.

So far as negligence is concerned, the plaintiff made out a prima facie case against the defendant which, if believed, entitled him to a verdict. The duty owed by the landlord to his tenant to maintain the stairway in a reasonably safe condition was owed equally to the guest of the tenant. (*Matthews v. Spiegel*, 385 Pa. 203.)

Nor did the plaintiff's or the defendant's presentation of evidence convict the plaintiff of contributory negligence as a matter of law. The plaintiff had not been in the apartment house prior to his visit of April 28, 1957, so that he could not be charged with testing a known danger or one of which he should have been aware. He testified that the hallway was not adequately illuminated so he cannot be charged with failure to observe what his eyes should have called to his atten-

tion. He did testify that as he went up the stairs he did see "some kind of little silver-looking things on the step," but it was a question of fact for the trial court to determine whether these "silver-looking things" constituted notice to the plaintiff of a defective stairway.

Then the defendant argues that the plaintiff was guilty of contributory negligence because he did not grasp the railing when he was falling. There was no evidence that he was close enough to the railing to seize it at the crucial moment that he lost balance due to being tripped. Once one begins to fall and the law of gravitation takes over, there is no veto to nullify the law so that the falling person may seize objects which will enable him to prevent what happens inevitably when anyone or anything is violently detached from terra firma and is suddenly cast into midair.

Although the defendant does not ask for a new trial on the ground of excessive verdict, she argues that the evidence "offered by the plaintiff was not sufficient to legally support the money damages awarded by the verdict." When the plaintiff fell he was taken to the Presbyterian Hospital in Philadelphia where he was treated for a fracture through the upper portion of the right tibia and through the neck of the right fibula. He was in the hospital for eight days and was discharged by the doctor some seven months later. His leg was in a cast and re-casts for about 15 months. He used crutches and then when he was able to discard them he walked with a stick.

Prior to his injury he was employed for a period of about three weeks by the Counties Construction Company as a laborer, earning $2.10 per hour, for 40 hours a week. Following the accident he could not work for "close to two years." Before obtaining employment with the Counties Construction Company his employment record was irregular and the defendant complains that the plaintiff could not, therefore, be entitled to

compensation for reduced earning power, based on the short period of regular employment before his accident. No evidence was adduced to rebut the plaintiff's statement that had he not been injured he would have continued to work at the Counties Construction Company. The trial court held, and properly so, that the verdict "was a modest one for the type of injury sustained and the losses incurred."

Affirmed.

Mr. Justice COHEN concurs in the result.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Plaintiff must prove by a fair preponderance of the evidence (1) the cause of the accident and injury and (2) that it was caused by the negligence of the defendant and (3) that such negligence was the proximate cause of the accident. Furthermore, a jury is not permitted to conjecture or guess, and if, from the testimony of plaintiff and his (and/or defendant's) witnesses such negligence is not clearly established, he cannot recover. *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 469, 175 A. 2d 864, and cases cited therein.

The majority opinion says plaintiff testified that: ". . . a nail protruding from the second tread caught his heel causing him to fall." This is misleading since it is only partially correct. Plaintiff's exact testimony was:

### Direct Examination

"Q. And what happened to you as you stepped down on the next step with your right foot? A. Well, something caught this leg (indicating left) this foot here. Q. What caught it? A. *It must have been a nail or something,* whatever they call it, *that silvered stuff on the step there.\** Q. Now, had you seen that before

---

\* Italics throughout, ours.

you took your first step? A. No, I hadn't seen it. Q. Could you see it? A. No, I hadn't seen it. Q. Did you look to see? A. Well, I was looking, but I could probably see it shine, but I couldn't see there was nothing up there to trip me."

## Cross-Examination

. . .

"A. . . . *Something* caught my heel. . . . Q. And with your right foot, which step were you stepping on? A. The next one. Q. Which would be the second step? A. Yes, sir. Q. And then what happened? A. The *nail caught me on my heel.*"

Plaintiff's witness, Hazel Hunter, who accompanied him down the stairs, saw plaintiff fall and thus testified: "Q. Now, when he fell down did you look at the step to see what caused him to fall down? A. Well, I looked at it, yes. . . . Q. What was it that caused him to trip? A. *Well, either the rubber mat or a nail, or this aluminum edge on it.*"

Furthermore, plaintiff kept contradicting himself as to which step he fell on.

Moreover, plaintiff's failure to prove that a protruding nail was the cause of his fall is further emphasized by the difference between the allegata and probata.

Plaintiff in his complaint alleged that defendant's negligence consisted of "(a) In permitting the said stairway, and more particularly *the metal strip* on the edge of the TOP step of the third floor to become loose, detached and broken; . . ."

In *Bohner v. Eastern Express, Inc.*, 405 Pa., supra, the Court said (page 469): "In Mrahunec v. Fausti, 385 Pa. 64, 69, 121 A. 2d 878, the Court said: 'Plaintiff's case fails for the additional reason that he falls within the well established principle, viz., where plain-

tiff has the burden of proving certain facts he cannot recover if his evidence is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make findings or legitimate inferences therefrom a mere conjecture: Wagner v. Somerset, 372 Pa. 338, 341, 93 A. 2d 440; Musleva v. Patton Clay Mfg. Co., 338 Pa. 249, 12 A. 2d 554.' See to the same effect: Moyerman v. Glanzberg, 391 Pa. 387, 395, 138 A. 2d 681; DiGiannantonio v. Pittsburgh Railways Co., 402 Pa. [27, 166 A. 2d 28], supra."

Plaintiff had the burden of proving what caused his accident and injury and his proof thereof was so uncertain and equivocal as to make any findings or conclusion therefrom a mere conjecture.

For these reasons I dissent and would enter judgment for defendant non obstante veredicto.