**Fleeger v. United Services Automobile Association**

C.P. of Lawrence County, No. 10736 of 2011

*Charles W. Garbett*, for plaintiffs.
*Patricia A. Monahan*, for defendant.

COX, *J.*, Dec. 29, 2014—Before the court for disposition is the motion for partial summary judgment filed on behalf of the plaintiffs David Fleeger and Marcia Fleeger, which argues that the defendant has failed to provide evidence that the damage caused to the plaintiffs' property was caused by a domestic animal to place this case within the scope of the insurance policy's domestic animal exclusion. The plaintiffs also contend that the doctrine of spoliation raises the presumption that the damage to the carpeting did not fall within the exclusionary language of the contract because the defendant had the opportunity to test the carpet to determine whether the feces were from a human or an animal. In response, the defendant filed a cross motion for partial summary judgment asserting that the plaintiffs' misrepresentations have voided the insurance policy, no dispute of material fact exists to challenge the applicability of the insurance policy exclusion for damage caused by domestic animals, the plaintiffs' bad faith claim is legally insufficient as they have failed to present a valid claim for breach of contract and, if the court concludes the breach of contract claim is sufficient to proceed to a jury, the bad faith claim should be dismissed as the defendant had a reasonable basis for denying the plaintiffs' claim.

The plaintiffs are adult individuals who currently reside at 2860 La Ceresta Drive, Beavercreek, Ohio, and they own property located at 3207 Ellwood Road, New Castle, Lawrence County, Pennsylvania. The plaintiffs obtained an "all risk" insurance policy provided by the defendant that affords dwelling liability coverage in the amount of $315,000.00 and personal liability coverage in the sum of $300,000.00 for the property located at 3207 Ellwood Road. That policy is intended to cover all loss except for those instances specifically excluded under the terms of the policy. One of the exclusions contained in that policy is for damages caused by domestic animals. The plaintiffs

leased that property to Alan Ross and Myrtle Ross, who vacated the premises in April of 2010. The plaintiffs discovered that Mr. and Mrs. Ross permitted a large dog to live inside the residence in violation of the lease. Upon entering the premises, Mr. Fleeger discovered that there was urine and feces on the floors, walls, stairs and heating ducts, which caused damage to the residence in the amount of $59,731.65. The plaintiffs notified the defendant about this damage and made a claim for damage caused by animals under the insurance policy they purchased. The plaintiffs later altered their claims to indicate the damage was due to vandalism. However, the defendant challenged the validity of that claim as it believed the damage was not covered under the insurance policy. On several occasions in dealing with the defendant, Mr. Fleeger stated that he believed that the dog caused the damage to the residence, but the dog may have been forced or allowed to do so as the tenants confined him in the residence while they were at work and they knew that damage was occurring.

The plaintiffs filed suit on June 3, 2011, asserting claims of breach of contract, bad faith and a violation of the Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL") stating that the property was vandalized by Mr. and Mrs. Ross allowing their dog to urinate and defecate inside of the residence. The defendant filed its answer and new matter on October 3, 2011, and the plaintiffs responded with plaintiffs' counter reply to defendant's new matter on November 3, 2011. The plaintiffs then filed a petition for leave to amend, which was granted by President Judge Dominick Motto on November 21, 2011. The plaintiffs filed their amended complaint on November 21, 2011. On March 12, 2013, the defendant filed defendant's motion for judgment on the pleadings on Pplaintiffs' UTPCPL Claim, which contended that the claim based on a violation of the UTPCPL lacks merit as

the residence in question was not purchased primarily for personal, family or household purposes. The plaintiffs then filed a second petition for leave to amend, in which they sought to clarify its existing claims. The court denied the motion for judgment on The pleadings stating that there was an issue of fact concerning the purpose for which the plaintiffs purchased the property and whether their belief in the scope of the coverage was reasonable and induced them into purchasing the insurance policy. The court granted the plaintiffs' petition for leave to amend. The plaintiffs filed their second amended complaint, in which they asserted that the tenants vandalized the residence by permitting a large Doberman Pincer to live inside the home and by permitting urine and feces to be spread through the dwelling either by themselves or the dog. On December 10, 2013, the defendant filed its answer and new matter to plaintiffs' second amended complaint. The plaintiffs filed a reply to new matter and, subsequently, a motion for partial summary judgment on January 8, 2014. The defendant responded with defendant's reply to plaintiffs' motion for summary judgment and defendant's cross motion for partial summary judgment on February 7, 2014.

The plaintiffs contend that the defendant has failed to provide evidence that the damage caused to the plaintiffs' property was caused by a domestic animal to place this case within the scope of the insurance policy's domestic animal exclusion. The plaintiffs noted that the only evidence relied upon by the defendant is the testimony of Mr. Fleeger stating that he believed that the dog caused the damage by urinating and defecating in the dwelling, but that evidence is inadmissible as it is speculation.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make

out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of the case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038(1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury. Pa.R.C.P. No. 1035.2. Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa.Super. 1999)).

The moving party bears the burden of proving the non-existence of any genuine issue of material fact. *Id.* A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Sincor Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000).

Conversely, the non-moving party must adduce sufficient evidence on issues essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel, supra.* The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *DeSantis v. Frick Company,* 745 A.2d 624 (Pa. Super. 1999); *Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa. Super. 464, 469-472, 684 A.2d 137, 140(1996).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 752 A.2d 339 (2000). Summary judgment is only proper when the uncontroverted allegations in the pleadings depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n.,* 555 Pa. 149, 153, 723 A.2d 174, 175 (1999). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima cause of action or defense. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore,* 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on

a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

When an insurance policy is clear and unambiguous, it must be given its ordinary meaning of the terms used. *Pennsylvania Manufacturers' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967) (quoting *Topkis v. Rosenzweig*, 333 Pa. 529, 5 A.2d 100 (1939)). "Where the policy language is unambiguous, a court cannot adopt a construction which conflicts with the clear meaning of the language." *Guardian Life Ins. Co. of America v. Zerance*, 505 Pa. 345, 353,479 A.2d 949, 953 (1984) (citing *Patton v. Patton*, 413 Pa. 566, 198 A.2d 578 (1964)). When the language in the policy is clear and unambiguous, it must be enforced as written. *Id.* (citing *Judge v. Prudential Insurance Co.*, 321 Pa. 454, 184 A. 543 (1936)). The court is required to read the policy provisions to avoid ambiguities. *Monti v. Rockwood Ins. Co.*, 303 Pa. Super. 473, 476, 450 A.2d 24, 25-26 (1982) (citing *St. Paul Fire and Mar. Ins. v. U.S. Fire Ins. Co.*, 655 F.2d 521 (3rd Cir. 1981)). "A court should not rewrite terms of a policy or give them a construction in conflict with the accepted and plain meaning of language used in the policy. *Id.*

An insurance policy is typically construed strongly against the insurer. *Miller v. Boston Ins. Co.*, 420 Pa. 566, 570, 218 A.2d 275, 277 (1966) (quoting *Warner v. Employers' Liability Assurance Corp.*, 390 Pa. 62, 133 A.2d 231 (1957)). Although, it is incumbent upon the insured to establish that the claim is covered under the policy. *Id.* (citing *Fullmer v. Farm Bureau Mutual Auto Insurance Company*, 350 Pa. 451, 452, 39 A.2d 623 (1944)). The insurer then retains the burden of establishing its defense

based upon an exception or exclusion contained within the policy, *Id.* (quoting *Armon v. Aetna Casualty and Surety Co.*, 369 Pa. 465, 87 A.2d 302, 304 (1952)). "It is only when the existence of facts constituting an affirmative defense is admitted by the plaintiff, or is established by uncontradicted testimony in the plaintiffs case, that burden is removed from the defendant." *Armon v. Aetna Cas. & Sur. Co.*, 369 Pa. 465, 469, 87 A.2d 302, 304 (1952) (citing *Ehrlich v. United States Fidelity & Guaranty Co.*, 356 Pa. 417, 424, 51 A.2d 794, 798 (1947)). "Whether a claim is within a policy's coverage or barred by an exclusion is a question of law that may be decided by a motion for summary judgment." *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 11, 670 A.2d 646, 651 (1995) (citing *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa. Super. 342, 346, 647 A.2d 939, 940-941 (1994)).

In the current case, the issue is whether the damage to the residence was caused by the tenants themselves, or the tenants' leaving their dog within the residence with the intention that the dog urinate and defecate in the residence intending to damage the premises or whether the dog was just left within the residence and caused damages to the premises but there was not the intention to specifically damage the property. The defendant has provided the court with the deposition testimony of Mr. Fleeger, in which he stated on several occasions that the dog urinated and defecated in the residence as it was locked inside without the ability to exit. The defendant also presented a letter dated July 30, 2010, in which Captain Lauren E. Rosenblatt, a legal assistance attorney for the United States Air Force and the Plaintiffs representative, stated that she inspected the home and discovered it was apparent that the tenants willfully permitted a dog to occupy the home without providing the dog the ability to go outside. She also stated that the tenants permitted the dog to

remain in the house to urinate and defecate anywhere it pleased. Captain Rosenblatt further opined the cause of the damages was vandalism. However, it appears that both Mr. Fleeger and Captain Rosenblatt lacked direct evidence as to the origin of the urine and feces as they did not observe the dog urinating or defecating in the residence nor did they have any testing conducted. They are also not qualified to testify whether it was the intent of the tenants to deliberately damage the property of the plaintiffs, nor conclude that this is a case involving vandalism.

Moreover, the court has been presented with the deposition testimony of Leesa O. Tomsett, the corporate representative for USAA, who testified that the terms of the lease between the plaintiffs and Mr. and Mrs. Ross indicated that a dog was not permitted in the residence. Ms. Tomsett also stated that the patterns of urination were consistent with an animal causing the damage, but she could not rule out that it was caused by a human. It must be noted that Ms. Tomsett stated that it is undisputed that the dog was left in the residence unattended when the animal was not supposed to be inside based upon the terms of the lease.

The defendant asserts that there is circumstantial evidence that the dog caused the damage to the residence based upon the fact that plaintiff acknowledged a dog was kept within the residence and the location of the urine and feces, plus a paint tray was placed in one heating duct to collect urine. Thus, there remains a question of fact concerning whether the damage inflicted upon the residence was caused by a domesticated animal, by the tenants themselves or through the tenants leaving the dog in the house for long periods of time with the intention to cause damage to the premises.[1]

---

1. Neither party has presented evidence that Mr. and Mrs. Ross

Ms. Tomsett could not conclusively rule out that a human caused the damage from the urine and feces and Major Fleeger and Captain Rosenblatt lack the requisite level of expertise to conclusively surmise that the damage was caused by a dog. Hence there is a question of fact concerning the origin of the urine and feces. Additionally, the plaintiffs have also asserted that, even if the urine and feces were produced by the dog, it was vandalism to leave the dog in the residence all day without the ability to go outside. According to the testimony of Ms. Tomsett and Mr. Fleeger, it was a violation of the lease agreement between the plaintiffs and Mr. and Mrs. Ross for a dog to be in the residence. In the current matter, the plaintiffs are alleging that the actions of Mr. and Mrs. Ross went beyond merely breaching the contract by having a dog in the residence as they left the dog in the residence all day without the ability to go outside, which caused it to urinate and defecate in the house. The plaintiff asserts that the actions of Mr. and Mrs. Ross constituted vandalism which is entitled criminal mischief by the Pennsylvania Crimes Code. It is important to note that the criminal statute for criminal mischief states, "A person is guilty of criminal mischief if he: (5) intentionally damages real or personal property of another." 18 Pa.C.S.A. § 3304(a)(5). The plaintiffs aver that the property was intentionally damaged by Mr. and Mrs. Ross urinating or defecating on the floors or by keeping the dog within the residence. The plaintiffs argue that those actions constitute criminal mischief as defined by 18 Pa.C.S.A. § 3304(a)(5) and demonstrate vandalism pursuant to the insurance contract with the defendant. There remains a question of fact as to the origin of the urine and feces and concerning whether Mr. and Mrs. Ross confined the dog within the residence as a means of intentionally damaging the residence as claimed by the

personally caused the damage.

Plaintiffs or if they allowed the dog to defile the residence without the specific intent to cause damage to the same as asserted by the defendant as they worked long hours and multiple jobs and kept the residence in a slovenly manner. The plaintiffs have been able to present adequate evidence that there was damage caused to the property. The plaintiff observed the dog inside of the house, in violation of the lease agreement. There is also testimony that the dog was confined to the residence alone and without the ability to go outside, which is circumstantial evidence that it caused the damage to the residence. Also, a paint tray was placed in a heating duct to collect urine which could lead one to the conclusion that there was no intention to damage the property because if the intention existed, the tray would not have been placed in the duct. Therefore, the parties have presented sufficient evidence to create a question of fact regarding whether the insurance policy exclusion for domestic animals precludes their recovery for the damage caused to the residence by urine and feces left after Mr. and Mrs. Ross vacated the same.

The plaintiffs also contend that they are entitled to summary judgment as the doctrine of spoliation creates the presumption that the damage to the carpeting did not fall within the exclusionary language of the contract because the defendant had the opportunity to test the carpet to determine whether the feces were from a human or an animal.

Courts have adopted the spoliation doctrine which allows for an inference that evidence destroyed by one party would have been unfavorable to the position of the offending party. *Mount Olivet Tabernacle v. Edwin L. Wiegand Division, Emerson Electric Co.*, 781 A.2d 1263, 1269 (Pa. Super. 2001) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3rd Cir. Pa. 1994)). The spoliation

inference has both prophylactic and punitive effects. *Id.* Under this rule the court may impose various sanctions, which include: "dismissal, striking out pleadings or portions thereof, prohibiting the introduction of evidence, and permitting the inference at trial that the destroyed evidence would have been harmful to plaintiff." *Troup v. Tri-County Confinement Svs.*, 708 A.2d 825, 828 (Pa. Super. 1998) (citing *Robinson v. Alston*, 413 Pa. 296, 197 A.2d 40 (1964)).

The Pennsylvania Supreme Court has provided the following factors to aid the court in deciding the proper penalty for spoliation:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. *Shroeder v. Commonwealth*, 551 Pa. 243, 250-251.

In deciding the proper sanction for spoliation, the court should apply the least drastic sanction, such as a curative instruction that would both remedy the problem of the missing evidence, if applying any sanction at all. Sebelling by & through *Sebelling v. Yamaha Motor Corp., USA*, 705 A.2d 904, 907 (Pa. Super. 1998). The court must determine the degree of fault attributable to defendant and in order to do this the court must examine "two components: responsibility, and the presence or absence of bad faith." *Mount Olivet Tabernacle*, 781 A.2d at 1270. Also, if comparable evidence exists then the prejudice created by the spoliation of the evidence is removed. *O'Donnell v. Big Yank*, 696 A.2d 846, 848-849 (1997) (citing *Quaile v. Carol Cable Co. Inc.*, 1993 U.S. Dist. Lexis 2745 (E.D. Pa. 1993); *Martin v. Volkswagen of America, Inc.*, 1989 U.S. Dist. Lexis 8087 (E.D. Pa. 1989)); *See also Amico v.*

*Radius Communications*, 2001 Phila. Ct. Com. Pl. Lexis 89 (2001).

In the current matter, it does not appear that a sanction or inference based upon the doctrine of spoliation is necessary as both parties had access to the carpet and could have had testing performed to determine the origin of the feces and urine that was present. Neither party had the carpet tested, even though they had the opportunity to do so. It must be noted that the plaintiffs, as owners of the residence, had access to the entire carpet and provided a sample of the same to the defendant. The plaintiffs cannot now assert that it was the duty of the defendant to test the carpet when they had the same opportunity. As a result, the court will not impose any type of spoliation sanction against the defendant and there will be no presumption concerning the origin of the feces on the carpet. It must be noted that the plaintiff chose to destroy the carpet after providing a sample to the defendant. Thus, the plaintiffs' motion for summary judgment is denied.

The defendant filed a cross motion for partial summary judgment asserting that the plaintiffs' misrepresentations have voided the insurance policy, no dispute of material fact exists to challenge the applicability of the insurance policy exclusion for damage caused by domestic animals, the plaintiffs' bad faith claim is legally insufficient as they have failed to present a valid claim for breach of contract and, if the court concludes the breach of contract claim is sufficient to proceed to a jury, the bad faith claim should be dismissed as the defendant had a reasonable basis for denying the plaintiffs' claim.

"In order for an insurer to carry its burden of proving misrepresentation, it must show that the representation was false, that the subject matter was material to the risk, and that the applicant knew it to be false and made

representation in bad faith." *A.G. Allebach, Inc. v. Hurley*, 373 Pa. Super. 41, 52, 540 A.2d 289, 294 (1988) (citing *Allstate Insurance Co. v. Stinger*, 400 Pa. 533, 537, 163 A.2d 74, 78 (1960); *Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa. Super. 519, 529, 463 A.2d 1017, 1023 (1983)). The burden of proving fraud is placed upon the insurer alleging it and it must be established by clear and convincing evidence. *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 476, 781 A.2d 1172, 1179 (2001) (citing *New York Life Ins. Co. v. Brandwene et ux.*, 316 Pa. 218, 172 A. 669 (1934)). The insurer must prove that the misrepresentations were material to the risk assumed by the insurer." *Id.* (citing *Evans v. Penn Mutual Life Ins. Co. of Philadelphia*, 322 Pa. 547, 186 A. 133 (1936)). "When knowledge or ignorance of certain information would influence the decision of an insurer...that information is deemed material to the risk assumed by the insurer." *Id.* (citing *A.G. Allebach, Inc.*, *supra.*) The courts have defined fraud as "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture." *Id.* (quoting *Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679, 682 (1991)). That means there must be a deliberate intent to deceive. *Id.*

In the current case, the insurance policy in question contains a provision that states the following:

Concealment of Fraud. The entire policy will be void if, whether before or after a loss, you have:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements; relating to this insurance.

The defendant is now asserting that the insurance policy is void due to the plaintiffs' misrepresentation concerning the cause and origin of the feces and urine as it appears the plaintiffs first contended that the damage was caused by a dog and have altered that contention to include that the damage could have been caused by Mr. and Mrs. Ross either through their own acts or by leaving the dog in the home alone without the ability to go outside with the intent to cause damage to the inside of the residence. However, there are remaining questions of fact concerning whether or not the plaintiffs have intentionally concealed or misrepresented a material fact. Even though, Mr. Fleeger originally stated that the urine and feces were produced by a dog, the court has not been presented with any proof to conclusively determine that a dog actually caused the damage to the residence. Moreover, the plaintiffs have also asserted a claim that Mr. and Mrs. Ross locked their dog within the residence without providing it with access to the outside, which caused the dog to urinate and defecate on the walls and floors of the residence. In doing so, according to the plaintiffs, Mr. and Mrs. Ross committed vandalism of the property by intentionally allowing the dog to damage the residence. This produces another question to be decided by the jury as to whether or not those acts by Mr. and Mrs. Ross constitute vandalism as defined by the insurance policy. There is conflicting evidence on record concerning the cause of the damage to the residence and that creates a question of fact for a jury concerning whether the plaintiffs misrepresented a material fact. Therefore, the court denies the defendant's cross partial motion for summary judgment concerning whether the insurance policy is void under its concealment of fraud provision and that issue shall be decided by a jury.

The defendant also asserts no dispute of material fact exists to challenge the applicability of the insurance policy exclusion for damage caused by domestic animals. This issue was addressed previously in the court's disposition of the plaintiffs' motion for summary judgment. As the court explained in the aforementioned section of this opinion, Mr. Fleeger has stated on several occasions that a dog urinated and defecated inside of the residence causing extensive damage. This was also reiterated by Captain Rosenblatt. However, those individuals do not have the proper training to conclusively state that the urine and feces were produced by a dog, which creates a question of fact as to whether a dog actually caused the damage to the residence. Moreover, the plaintiffs have also asserted that, if the damage was caused by a dog, it is still vandalism as Mr. and Mrs. Ross locked the dog within the residence for extended periods of time without allowing it to go outside in order to intentionally cause damage to the property. There is also testimony by Ms. Tomsett that the lease prohibited Mr. and Mrs. Ross from allowing the dog to enter the residence. It is important to note that the defendant was provided with a sample of the carpet, which it could have sent for testing to conclusively determine whether the urine and feces were produced by a dog or a human and it chose not to have those tests conducted. Hence, there are remaining issues of material facts concerning the applicability of the insurance policy exclusion for damage caused by domestic animals.

The defendant further argues that the plaintiffs' bad faith claim is legally insufficient as they have failed to present a valid claim for breach of contract and, if the court concludes the breach of contract claim is sufficient to proceed to a jury, the bad faith claim should be dismissed as the defendant had a reasonable basis for denying the plaintiffs' claim. As stated previously, the plaintiffs have

presented sufficient evidence to create questions of fact concerning their breach of contract claim arising out of the defendant's refusal to provide insurance coverage for the damage caused to the residence. The court will not further address that issue at this time as it has been thoroughly addressed previously in this opinion. The issue raised in the plaintiffs' bad faith claim concerning whether the defendant had a reasonable basis for denying the plaintiffs' insurance claim has not been addressed previously.

Bad faith as mentioned in 42 Pa.C.S.A. § 8371 is defined as

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing) through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. *Terletskv v. Prudential Property and Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680 (1994) (citations omitted).

Bad faith does not only include the denial of claims, but also misconduct of an insurer during the pendency of litigation. *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999). That means the duty owed by the insurer to the insured only ends when the insured files suit. *Id.* Stated in other words, "To prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Greene v. United Services Auto. Ass'n*, 936 A.2d 1178, 1189 (Pa. Super. 2007) (citing *Condio v. Erie Insurance Exchange*, 899 A.2d 1136, 1143

(Pa. Super. 2006)). "[B]ad faith must be proven by clear and convincing evidence and not merely insinuated." *Bombar v. West American Ins. Co.*, 932 A.2d 78, 90 (Pa. Super. 2007) (quoting *Terletsky v. Prudential Property and Casualty Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688 (1994)).

In the current case, the plaintiffs aver a bad faith claim based upon the defendant's alleged unreasonable delay in processing the plaintiffs' claim, failing to conduct an adequate investigation, failing to communicate with the plaintiffs, failing to pay the plaintiffs' claim within a reasonable time after receipt of the supporting documents, failing to attempt to effectuate a prompt settlement in good faith, failing to offer a reasonable payment of the plaintiffs' claim and failing to make an honest settlement attempt. However, the plaintiffs have not produced any evidence to demonstrate that the defendant denied the plaintiffs' claim in bad faith. The record reflects that the defendant had a reasonable basis to deny the plaintiffs' claim as the defendant asserts that damage caused by domestic animals is an exclusion to the insurance policy in question. As stated previously, this defense is valid and it needs to be decided by a jury as there are questions of fact concerning whether that exclusion applies. The plaintiffs have not presented any evidence that the defendant's denial of the claim demonstrated an improper purpose on its behalf and there is no evidence that it breached a known duty motivated by self-interest or ill will. In order for the plaintiffs' bad faith claim to survive summary judgment, there must be more evidence on record than averments in the various complaints alleging that the defendant failed to conduct a proper investigation and failed to timely settle the plaintiffs' claim. It is important to note that the plaintiffs have altered or clarified their claims on various occasions through the litigation of this case. In the complaint filed

on June 3, 2011, the plaintiffs averred that Mr. and Mrs. Ross vandalized the property as they "allowed, caused and permitted this dog to urinate on the walls of the plaintiffs' real property, as well as in the corners of the rooms, in doorways and down heater vents." (Plaintiffs' Compl. ¶8(c)). In addition, the complaint states, "vandalism is covered by the policy. The renters used the dog to perform their vandalism." (Plaintiffs' Compl. ¶ 8(b)). However, the plaintiffs altered their claim in their second amended complaint filed on November 25, 2013, by stating that Mr. and Mrs. Ross deliberately damaged the property "either by themselves, through this dog, or both." The second amended complaint further asserts that Mr. and Mrs. Ross vandalized the property by permitting the dog to urinate inside of the residence and by themselves urinating inside of the residence. (Plaintiffs' second amended Compl. ¶¶ 8(c) and 8(d)). Those are substantial alterations to the plaintiffs' theory as to how the residence was damaged and requires investigation on behalf of the defendant. Moreover, there are still substantial questions concerning the applicability of the domestic animal exclusion in the insurance policy, which requires litigation. The defendant should not be subjected to a bad faith claim based upon questioning the applicability of an insurance policy exclusion in a reasonable manner. The plaintiffs have failed to produce evidence to demonstrate that the defendant acted in bad faith by denying their claim for insurance coverage concerning the damage caused to the residence at 3207 Ellwood Road, New Castle, Lawrence County, Pennsylvania. If the plaintiffs' bad faith claim is permitted to survive summary judgment based upon the current record that would provide a basis for any insured to file a bad faith claim based upon every denial of insurance coverage, which is not the intent of 42 Pa.C.S.A. § 8371. Therefore, the court grants the defendant's cross partial

motion for summary judgment in regard to the plaintiffs' claim for bad faith pursuant to 42 Pa.C.S.A. § 8371 and that claim is dismissed.

For the reasons set forth in this opinion, the plaintiffs' motion for summary judgment is denied. The defendant's cross motion for partial summary judgment is granted concerning the plaintiffs' claim of bad faith and denied in relation to all other issues raised.

## ORDER OF COURT

Now this 29th day of December, 2014, this case was before the court previously for oral argument on the plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment, with both parties appearing through their counsel, the plaintiffs, David Fleeger and Marcia Fleeger, represented through counsel, Charles W. Garbett, Esquire, and the defendant, United Services Automobile Association, represented through counsel, Patricia A. Monahan, Esquire, and after consideration of the arguments and briefs presented and submitted by counsel and a complete review of the applicable record, the court enters the following order, and it is hereby, ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the motion for partial summary judgment filed by the plaintiff alleging the defendant has failed to present evidence regarding the insurance policy's domestic animal exclusion and the doctrine of spoliation is hereby denied.

2. In accordance with the attached opinion, the cross-motion for partial summary judgment filed by the defendant asserting that the plaintiffs' misrepresentations have voided the insurance policy, that there are no material facts challenging the domestic animal's exclusion exception to the insurance policy and that the bad-faith

claim is legally insufficient to show a claim for breach of contract is hereby denied.

3. In accordance with the attached opinion, the cross-motion for summary judgment on the bad-faith claim asserting that defendant had a reasonable basis for denying the plaintiffs' claim, is hereby granted. The Count of bad-faith contained in the complaint is hereby dismissed, with prejudice.

4. The prothonotary is directed to serve a copy of this order of court upon counsel of record, Charles W. Garbett, Esquire, and Patricia A. Monahan, Esquire.